[Civ. No. 18274. First Dist., Div. Two. Dec. 1, 1959.]

WILLIAM GEORGE, Respondent, v. J. E. MATTHEWS et al., Defendants; W. C. NIXON, Appellant.

Keith, Creede & Sedgwick, Frank J. Creede, Sedgwick, Detert, Moran & Arnold, Peart, Baraty & Hassard and George A. Smith for Appellant.

Jones & Sorell and Philander Brooks Beadle for Respondent.

DOOLING, Acting P. J.—Plaintiff sued defendants for injuries following their alleged negligent treatment of him as a patient. The jury returned a verdict for plaintiff against both defendants and from the judgment entered thereon defendant Nixon appeals.

Nixon is a doctor of medicine and the other defendant, Matthews, is a doctor of dentistry. The first argument presented by appellant, Nixon, is that there is no substantial evidence to support the judgment against him. ■■■ It is axiomatic that on appeal we cannot consider the conflicts in the evidence but must accept the evidence most favorable to respondent including every reasonable inference favorable to the judgment which can be drawn therefrom. While appellant refers to much evidence favorable to him in the statement of facts in his opening brief we will therefore content ourselves with stating that although there was substantial expert evidence which, if believed by the jury, would have amply supported a judgment for appellant, an examination of the record satisfies us that there is also substantial support in the evidence for the judgment against him.

Respondent first consulted appellant on December 29, 1952, complaining of a low back pain of several years duration. After examination appellant recommended that respondent see a dentist and respondent visited defendant Matthews. Matthews found him suffering from pyorrhea and recommended the extraction of all of his teeth. The year before respondent had consulted Matthews who had at that time made a similar recommendation. Appellant and Dr. Matthews had a common reception room and used the same office nurse and before respondent consulted Dr. Matthews appellant told him that he and Dr. Matthews had a tacit agreement that they would work together on his case. Dr. Matthews extracted all of respondent's teeth in four visits: January 16, 21 and 28, and February 6, 1953. Some teeth broke while being extracted and Dr. Matthews left the roots of several in re-

spondent's upper jaw. Respondent testified that Dr. Matthews did not inform him that he had left any roots in his jaw.

On January 29, 1953, respondent had a low grade fever, a rash and increased pulse rate. He called appellant to his home and appellant administered an antihistamine and an injection of penicillin. On February 6 in appellant's office he was given another penicillin injection by Dr. Hambrick, appellant's associate. On February 16 appellant administered another penicillin injection. There was testimony of other injections during this period but the testimony of these was in conflict. On February 20 respondent was suffering chills and fever and had a rapid pulse. Appellant placed him in the French Hospital and a diagnosis of septicemia was made. X-rays of the patient's upper jaw were taken but not of the portion in which the broken roots were located and at no time did appellant discover the broken roots. Antibiotics were given other than penicillin and on March 5, the patient's temperature having been normal since March 1, he was discharged from the hospital. He relieved appellant of his duties and consulted his family physician who stopped all medical treatment. His temperature went up again and on March 11 he entered a veteran's hospital where he remained until May 20. The diagnosis was septicemia, with rheumatic arthritis, staphylococcal lobar pneumonia and staphylococcal empyema. X-rays were taken and the broken roots in his jaw discovered. Following the removal of the roots the patient's temperature became normal and remained so, his chest cleared and the empyema disappeared. There was substantial evidence that by reason of his prolonged infection and fever respondent's health is permanently impaired.

An expert medical witness called by respondent testified that in his opinion the broken roots in respondent's upper jaw were a focus of infection and this witness concluded from the fact that after the roots were finally extracted "the patient's temperature became normal and remained so. That is clinical proof that probably the chief cause of all his troubles were these foci, and by that we mean pockets of pus, down in the sockets where it had been there for weeks and weeks and weeks, causing all this trouble."

This witness testified that standard medical practice in the community would have required: 1. that the doctor, because of the infection in the patient's mouth should have given respondent an antibiotic injection either the day before or the day upon which any teeth were extracted; 2. that the

doctor should have had adequate X-rays of the patient's jaw taken when he was in the French Hospital to determine whether there were any broken roots in respondent's jaw; and 3. having discovered the broken roots he should have had them extracted. ■ Standard practice was correctly defined as that degree of skill and learning and care which is ordinarily possessed and exercised by reasonably careful and prudent medical doctors, general practitioners, practicing their profession in San Francisco at the time in question. (*McCurdy* v. *Hatfield*, 30 Cal.2d 492, 495 [183 P.2d 269].)

Appellant argues that these answers were given by the expert on the false hypothesis that the dentist, Dr. Matthews, and respondent "functioned and acted jointly as a team in treating respondent."

■ It is clear that as to the testimony that when respondent was in the French Hospital under appellant's care standard practice required that the physician have adequate X-rays of the jaw taken to discover the broken roots and then to have them extracted refers to appellant's duty as physician in charge and not in any way to that of his codefendant dentist. This evidence standing alone is sufficient to support the judgment against appellant.

■ There was testimony by Dr. Moose, one of the codefendant's experts, that it was the duty of the physician in this case, rather than the dentist, to determine whether or not an antibiotic should be employed as a prophylactic measure. This evidence coupled with the evidence above quoted, that an antibiotic should have been administered by injection about the time of each extraction, would support a finding by the jury that it was appellant's duty to see that this was done.

Appellant makes the following contentions with regard to the instructions given and refused: 1. that the court did not clearly instruct the jury as to the issues in the case upon which the burden of proof rested on the plaintiff and refused instructions proposed by appellant which correctly covered this matter; 2. that the court did not clearly instruct the jury that it must consider the question of each defendant's liability separately and refused a correct instruction on this subject proposed by appellant; and 3. that the court erred in refusing an instruction proposed by appellant on unavoidable accident.

■ A party is not entitled to have the jury instructed in any particular language so long as the instructions given correctly state the law to be applied by the jury in arriving at its verdict. (*Estate of Woehr*, 166 Cal.App.2d 4, 19 [332

P.2d 818]; *Hooper* v. *Bronson,* 123 Cal.App.2d 243, 254-255 [266 P.2d 590].)

 1. The court instructed the jury on the burden of proof: ''The court instructs you that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that a defendant was negligent and that such negligence contributed as a proximate cause of injury to the plaintiff. If plaintiff has fulfilled that burden as against a defendant, plaintiff is entitled to your verdict. If plaintiff has not fulfilled that burden as against a defendant, said defendant is entitled to your verdict.''

The court also instructed that the burden of proof rested on plaintiff to prove his damages. The jury was thus explicitly instructed as to each of the issues upon which plaintiff must carry the burden of proof.

 2. The court instructed: ''Although there are two defendants in this action, it does not follow from that fact alone that if one is liable, both are liable. Each is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact, if it should become a fact, that you find against the other.''

In the instruction on the burden of proof above quoted the court told the jury: ''If plaintiff has not fulfilled that burden as against a defendant, *said defendant is entitled to your verdict.*'' (Emphasis ours.)

The court furnished the jury with four forms of verdict, one for the plaintiff against both defendants, one for the plaintiff against the codefendant and *in favor of appellant,* one against appellant and in favor of his codefendant, and the fourth in favor of both defendants. Each of these forms was read separately to the jury with instructions to use the one which represented their verdict.

It is inconceivable that, as argued by appellant, the jury could have been deceived into believing that if they found a verdict against one defendant they must find a verdict against both.

3. The issues in this case were negligence and proximate cause. In *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 659 [320 P.2d 500] the court said: ''The statement in the quoted instruction on 'unavoidable or inevitable accident' that these terms 'simply denote an accident that occurred without having been proximately caused by negligence' informs the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his

burden of proving that the defendant's negligence caused the accident. Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose." So here.

██ Appellant argues that one of appellant's theories was that septicemia is a calculated risk where teeth are extracted from a patient with pyorrhea and "appellant's requested unavoidable accident instruction was an appropriate vehicle to convey to the jury the theory of that defense." The issue was whether appellant was negligent in his treatment of respondent and the evidence on calculated risk was to be weighed by the jury in determining that issue. The unavoidable accident instruction, as pointed out in *Butigan*, only couched this question of appellant's negligence in another and possibly confusing fashion.

Judgment affirmed.

Draper, J., and Stone, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 27, 1960.

---

*Assigned by Chairman of Judicial Council.