[Civ. No. 13700. Fourth Dist., Div. Two. Sept. 20, 1974.]

HOWARD J. WILLIAMS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, TRANS GLOBE
TRAVEL BUREAU et al., Respondents.

938

COUNSEL

Byhower, Longley & Petherbridge and Richard W. Petherbridge for Petitioner.

Garabedian & Holzer and Herbert A. Garabedian for Respondents.

OPINION

TAMURA, J.—Petitioner (applicant) seeks review and annulment of a decision and order of the Workmen's Compensation Appeals Board vacating a referee's finding and award that injuries sustained by applicant

in an automobile accident were incurred in the course and scope of his employment.

The material facts were as follows:

Applicant, a 21 year old University of California at Irvine student, was employed as a part-time delivery man for Trans Globe Travel Bureau (Trans Globe). He was compensated on an hourly basis plus mileage for the use of his car.

About noon on January 24, 1973, applicant reported to the Irvine office of his employer and was instructed to deliver tickets to and collect a check from an office in Santa Ana and then to go to the Sierra Madre office of Trans Globe to pick up a book. After completing his mission in Santa Ana, applicant proceeded to the Sierra Madre office arriving there about 3 p.m. He remained there for 10 or 15 minutes and started back to the Irvine office. While driving around attempting to find the freeway entrance, he observed a hitchhiker, picked him up and took him to his home. After partaking of a sandwich and a glass of water at the hitchhiker's home, applicant left, got onto Foothill Boulevard and attempted to find an entrance to the freeway which would eventually lead him back to Orange County. A motorcycle officer stationed at Foothill and Sierra Madre Boulevard observed applicant proceeding east on Foothill run a red light at that intersection. The officer pursued applicant, flashing his red light and sounding his horn. Instead of stopping, applicant accelerated to speeds estimated by the officer as high as 85 to 90 miles per hour through heavy traffic until he rear ended a vehicle which was stopped at an intersection attempting to make a left turn. Applicant suffered severe injuries as a result of the accident.

Applicant did not recall any of the circumstances surrounding the chase other than the fact that he remembered seeing the officer's red light. He had no explanation for his unusual behavior except that he became "upset." There was no evidence that applicant was under the influence of any alcoholic beverage or drugs. Nor was there any evidence that he was wanted for any criminal offense. His only prior involvements with the law were for minor Vehicle Code violations. Applicant was examined by Dr. Jeffries, a psychiatrist, who reported that at the time of the accident and for a few days prior thereto applicant was in a "state of partial unreality" and that the attempt to evade the police was "evidence of bad judgment secondary to a mental disorder. . . ."

A police officer who interviewed applicant at the hospital shortly after the accident testified that applicant was conscious and responsive and told

the officer he was on his way to Ontario to visit a girl friend. Applicant had no recollection of that interview, denied he was on his way to Ontario, and testified that although he once had a girl friend in Ontario he had not seen her for four or five years and did not know where she lived. He testified that at the time of the accident he was attempting to get back on the freeway so that he could deliver the check he had picked up earlier to the Irvine office of the travel bureau before it closed that evening.

The referee determined applicant's testimony to be credible, found that he was within the course and scope of his employment when injured and awarded compensation. However, he found that the injuries were caused by petitioner's serious and willful misconduct and reduced the award to one-half.

Both parties petitioned the board for reconsideration, applicant on the ground the evidence failed to support a finding of serious and willful misconduct and respondents on the ground applicant was acting outside of the course and scope of his employment at the time of his injury.

The board granted respondents' petition for reconsideration and vacated the award. In its decision the board accepted the referee's assessment of the credibility of applicant's testimony that he had returned to the course and scope of his employment after he left the hitchhiker's house but held that his conduct during the high speed chase constituted an abandonment of his employment and that the injury was, therefore, noncompensable.[1]

Applicant contends that the board erred in failing to observe a distinction between an unauthorized departure from the course of employment and the performance of a duty in an unauthorized manner. He urges that in the case at bench applicant was engaged in the performance of his duty—returning to his place of employment to deliver items collected on his errands—and the fact that he was performing that duty in a "negligent" or unlawful manner did not constitute abandonment of employment. We agree.

Where an employee is in the performance of the duties of his employer, the fact that the injury was sustained while performing the duty in an unauthorized manner or in violation of instructions or rules of his employer does not make the injury one incurred outside the scope of employment. (*Associated Indem. Corp.* v. *Ind. Acc. Com.*, 18 Cal.2d 40, 47 [112 P.2d 615]; *Auto Lite etc. Corp.* v. *Ind. Acc. Com.*, 77 Cal.App.2d

[1]Having determined that the injury was noncompensable, the board disposed of the issue of serious and willful misconduct on the ground of mootness.

629, 632 [176 P.2d 62].) "[The employee's] transgression of rules, instructions, or established custom, as the case may be, is wholly within the sphere of the employment. It may constitute serious and willful misconduct of the employee, but it does not take him out of the course of his employment." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 9.02[1][c].)

Illegal or even criminal conduct by an employee in the course of his employment does not necessarily remove him from the scope of employment.[2] (1A Larson, Workmen's Compensation Law, § 35.20. See *Wiseman* v. *Industrial Acc. Com.*, 46 Cal.2d 570, 572-573 [297 P.2d 649]; *Pohler* v. *T. W. Snow Const. Co.*, 239 Iowa 1018 [33 N.W.2d 416, 422]; *Karlslyst* v. *Industrial Commission,* 243 Wis. 612 [11 N.W.2d 179, 180].) For example, exceeding a speed limit does not by itself constitute an abandonment of employment. (*Chaffee* v. *Effron*, 1 App.Div.2d 197 [149 N.Y.S.2d 115, 117]; *White* v. *C. H. Lyne Foundry & Machine Co.* (Fla.) 74 So.2d 538, 540.) As Professor Larson remarks: "It should be obvious that a truck driver, fluctuating between 45 and 55 miles an hour in a 50-mile speed zone is not automatically leaving and re-entering his employment each time the speedometer needle crosses the 50 mark." (1A Larson, Workmen's Compensation Law, *supra,* § 35.20.) The same principle applies to other traffic violations. (*Western Pac. R. R. Co.* v. *Indus. Acc. Com.,* 193 Cal. 413, 420 [224 P. 754] [riding bicycle at night without light]; *Day* v. *Gold Star Dairy,* 307 Mich. 383 [12 N.W.2d 5, 6] [passing on hill]; *Karlslyst* v. *Industrial Commission, supra,* 11 N.W.2d 179, 180 [riding running board]; *Sherrill & La Follette* v. *Herring,* 78 Ariz. 332 [279 P.2d 907, 910] [running stop sign].)

In *Zenith National Insurance Company* v. *Ind. Acc. Com.,* 30 Cal. Comp.Cases 42, the commission awarded compensation for injuries sustained by an employee under facts strikingly similar to those in the case at bench. A manager of a restaurant on his way to get a replacement for a dishwasher ran a stop sign and was pursued by a deputy sheriff with red lights and siren at speeds between 115 to 120 miles per hour. In attempting to elude the officer, the employee failed to make a curve in the road, overturned his vehicle and sustained injuries. The referee made an award, reduced by one-half because of serious and willful misconduct. The commission upheld the award, noting that a negligent or illegal act does not

---

[2]Some states have enacted statutes making the injury noncompensable where incurred in the course of commission of a crime. (1A Larson, Workmen's Compensation Law, § 35.40.) California has no such provision. However, where an employee is found guilty of serious and willful misconduct, the award must be reduced by one-half. (Lab. Code, § 4551.)

itself remove an employee from the scope of employment. In its petition for writ of review to the District Court of Appeal of the Second District, the insurance carrier made the identical contentions advanced by the carrier in the case at bench. The petition was denied.

In *Karlslyst* v. *Industrial Commission, supra,* 11 N.W.2d 179, an employee was riding in a semi-trailer truck driven by a fellow employee at between 25 and 30 miles per hour. He climbed out of the moving truck and was standing on the right running board intending to urinate when he lost his footing, fell and was injured. The Wisconsin Supreme Court, conceding that in addition to violating a statute against riding on running boards the employee may have committed the crime of indecent exposure, nonetheless upheld an award of compensation, remarking that "while he [the employee] was engaged in the performance of an act which was probably negligent, certainly silly and unnecessary, he was still in the course of his employment when he was accidentally injured."

 The board suggests that at the time of the accident applicant was concerned only with eluding his pursuer. However, an employee's personal purpose at the time of injury is irrelevant so long as he is engaged generally in performing a task for his employer. (*Wiseman* v. *Industrial Acc. Com., supra,* 46 Cal.2d 570, 573.) And it has been held that where the employee is combining his own business with that of his employer no nice inquiry will be made as to which business he was actually engaged in at the time of injury, " 'unless it clearly appears that neither directly [n]or indirectly could he have been serving his employer.' " (*Wiseman* v. *Industrial Acc. Com., supra,* at p. 573. See also *State Emp. etc. System* v. *Ind. Acc. Com.,* 97 Cal. App.2d 380 [217 P.2d 992].)

In its decision the board relied upon *Relay* v. *Continental American Life Ins. Co.,* 22 N.J.Misc. 347 [39 A.2d 84], affd. 133 N.J.L. 143 [43 A.2d 266]. Reliance upon that case is misplaced. It involved the death of an insurance agent who either fell or leaped out of a window of the 20th floor of an office building. Decedent was having domestic difficulties and on the day of his death lunched with his wife and later visited with his mother. At about 7:30 that evening he was seen entering the office building and a few minutes later his body was seen hurtling from the 20th floor window. There was evidence that decedent had vomited in the hallway of the 20th floor where the insurance company had provided him with an office and some vomitus was found on the window sill of the window from which he fell or jumped. The Supreme Court affirmed the decision of the Court of Common Pleas reversing an award of death benefits to the widow, holding that petitioner had failed to establish by a preponderance

of the evidence that decedent was in the course of his employment at the time of death. The court observed that whether decedent ever reached his office that night to undertake any work for his company was unknown and that the possibility was to the contrary. By contrast, in the case at bench the board accepted the referee's finding that applicant had returned to the performance of his duties at the time he was first observed by the motorcycle officer.

The other cases cited by the board involved situations where the employees were doing something they were not authorized to do rather than doing a required act in an unauthorized manner. For example, in *Ind. Indem. Exch.* v. *Ind. Acc. Com.,* 86 Cal.App.2d 202 [194 P.2d 552], an employee who had been specifically instructed not to use a certain motor vehicle took the vehicle on a personal errand (to pick up his clothes) and was fatally injured when the vehicle overturned. In annulling an award of death benefits, the reviewing court noted the distinction between cases of injury to an employee while doing an act outside the scope of employment and the doing of an act within the scope of employment in a forbidden manner but concluded that there was no basis for applying the distinction because under the undisputed facts of the case the injury occurred while "the employee was acting both beyond the scope of his employment and in a forbidden manner." (*Ind. Indem. Exch.* v. *Ind. Acc. Com., supra,* 86 Cal.App.2d 202, 204.)

In its decision the board refers to the fact that the "risk"—the likelihood of injury resulting from an attempt to elude the officer during a high speed chase—was one created wholly by the applicant. However, the doctrine of "added risk" has been repudiated in this state. (*Associated Indem. Co.* v. *Ind. Acc. Com., supra,* 18 Cal.2d 40, 46.)

The board's decision is annulled and the matter is remanded for further proceedings consistent with this opinion.

Gardner, P. J., and Kaufman, J., concurred.

The petition of respondents Trans. Globe Travel Bureau and General Accident, Fire and Life Assurance Corporation for a hearing by the Supreme Court was denied December 11, 1974. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.