[Civ. No. 46159. Second Dist., Div. One. July 16, 1976.]

MARION L. KELLY, Plaintiff and Appellant, v.
TRANS GLOBE TRAVEL BUREAU, INC.,
Defendant and Respondent.

## COUNSEL

Oliver, Sloan, Vargas, Shaffer & Lindvig, Lowen H. Stanley, Edward L. Lascher, Wendy C. Wilner and Richard C. Gilman for Plaintiff and Appellant.

Stockdale, Peckham, Estes, Ramsey, Lawler & Iorillo, Mario A. Iorillo and Clinton M. Hodges for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—The matter at bench is an appeal from a judgment for defendant in a personal injury action. It involves the novel issue of the collateral estoppel consequences of a finding in a workers' compensation proceeding that an employee was engaged in the scope of his employment when injured to a later civil action in which a third party injured in the same occurrence as the worker asserts the vicarious liability of the employer. The appeal involves, also, the propriety of judge-conducted voir dire of prospective jurors in a fashion seeking to preinstruct the prospective jurors in the application of hypothetical facts to principles of law and the entitlement of a plaintiff to a jury instruction defining return of an agent to the scope of his employment where return to scope of employment after deviation is the crucial factual issue in the case.

We conclude: (1) findings of injury within scope of employment in a workers' compensation proceeding do not collaterally estop the employer from litigating the issue of scope of employment where that issue is relevant to the claim of a third party who asserts that the employer is vicariously liable for a tort of the employee; (2) the method of voir dire employed by the trial judge was improper; (3) the trial court erroneously refused plaintiff's proposed instruction defining return to the scope of employment; and (4) the errors of the trial court in jury voir dire and refusal of the instruction are, in combination, prejudicial. We therefore reverse the judgment.

Injured in an automobile accident when the car in which she was riding was struck by one admittedly driven negligently by Howard J. Williams, plaintiff Marion J. Kelly sued Williams and his employer Trans Globe Travel Bureau, Inc., claiming that because Williams was acting within the scope of his employment at the time of the accident Trans Globe was vicariously liable for his tort.[1] The negligence of Williams having been admitted, the only issues tendered to the trial court were amount of damage and whether Williams was acting within the scope of his employment.

---

[1] Another rider also sued. He is not a party to this appeal.

Trial was to a jury. The trial judge conducted an extended personal voir dire examination of the panel of prospective jurors. In essence, he sought opinion from individual prospective jurors on a series of hypothetical questions dealing with scope of employment and proximate cause much in the manner that a law school instructor teaching a first year class in agency might employ the Socratic method.

None of the hypothetical questions dealt with the issue of return to the scope of employment after a deviation, although the subject of deviation itself was covered. When counsel for the plaintiff asked that a hypothetical situation involving return to scope of employment be presented, the trial judge responded that he would inform the jury that "under this set of facts there may be a return from a deviation." The judge told the panel that if "the deviation had ended and . . . the employee Williams had in fact returned to the scope of his employment, he was doing things for the benefit of his employer, it was within the scope of his employment, employer's instructions, he was following the duties assigned to him at the time of the accident, then under those circumstances the employer would be responsible." Queried by a prospective juror whether "By coming into the scope of his employer [sic], do you mean he's gone back to his place of employment or he has come to a point and then gone back?" the judge replied, "I can't make up the facts for you. I can't say at this point you must find that the employee returned to his scope of employment. This is your responsibility from all the facts."

At the trial, evidence on the issue of scope of employment was conflicting.

That favoring plaintiff's position showed the following. Williams was employed by Trans Globe pursuant to an arrangement by which he was required to use his own Toyota automobile and was paid mileage plus an hourly compensation. His duties encompassed those of a delivery man. At about 12 noon on January 24, 1973, Williams reported for work at the Irvine office of Trans Globe. He was instructed to deliver tickets to and collect a check from an office in Santa Ana and then to go to the Sierra Madre office of Trans Globe where he was to pick up a book and then return to Orange County where he was to deliver airline tickets to a Trans Globe customer, collect a check, and return it to Trans Globe's Irvine office.

Williams left the Irvine office at about 1 p.m. He made his Santa Ana call and proceeded to Sierra Madre where he picked up the book. He had difficulty finding his route back to Orange County. While seeking it, he picked up a hitchhiker whom he drove to the hitchhiker's stalled van. When the van could not be started, Williams drove the hitchhiker to the latter's home where the two stayed for a time. Sometime before 5 p.m., Williams commenced his return trip to Orange County but became lost and confused looking for the entry to the Pasadena Freeway. At about 5 p.m., Williams ran a red light at the intersection of Foothill Boulevard and Sierra Madre Boulevard. He stopped in a left turn lane northbound on Altadena Avenue. A police car pulled up behind him with red light activated and horn sounding. Williams veered to the right and fled from the police at high speed reaching more than 90 miles per hour. While fleeing, Williams collided with the car in which plaintiff was riding, causing the injury for which plaintiff sued.

The defense evidence consisted of a controverted statement attributed to Williams that at the time of the accident he was on his way to see a girl friend in Ontario.

During the course of the trial, the Court of Appeal filed its opinion in *Williams* v. *Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 937 [116 Cal.Rptr. 607] in which it held that for the purpose of workers' compensation benefits Williams was engaged in the performance of his duties at the time of the accident. Plaintiff moved for a directed verdict on the issue of Trans Globe's liability, arguing that the Court of Appeal opinion, then not yet final, collaterally estopped Trans Globe from contesting the issue of whether Williams was acting within the scope of his employment at the time of the accident. The trial court denied the motion.

The trial court instructed the jury that the negligence of Williams should be imputed to Trans Globe if Williams was acting within the scope of his employment at the time of the accident. In terms of BAJI No. 13.01, it instructed that: ". . . conduct is within the scope of his authority . . . if it occurs while the agent is engaged in the duties which he was employed to perform and relates to those duties." The court further told the jury, in terms of BAJI No. 13.02: ". . . when an agent departs or substantially deviates from the business or service of his principal, and pursues some activity or object not for his principal and not reasonably embraced within his employment, the principal is not responsible for

anything done . . . in such activity or deviation. The employment relationship is suspended from the time the employee leaves the scope of his employment until he returns."

The trial court refused an instruction offered by plaintiff borrowed from *Cain* v. *Marquez* (1939) 31 Cal.App.2d 430, 442 [88 P.2d 200], and section 237 of the Restatement Second of Agency and stating: "Where an agent temporarily abandons his principal's service, principal again becomes liable for agent's acts when agent resumes his duties, and the re-entry is not affected merely by agent's mental attitude, but there must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged."

While the jury was deliberating, it sent a note to the trial judge which states: "Would like to have any portion of the law re-read that would or might cover: 1. Substantial deviation 2. Intention" (Underscoring in original.) The trial court responded that it had not instructed on the subject of intention. It then reread its prior instructions which did not define the requirements of return to scope of employment after a deviation from it.

The jury returned its verdict for plaintiff against Williams and in favor of Trans Globe. This appeal from the resulting judgment followed. In it, appellant contends: (1) the trial court erred in not treating the decision in the workers' compensation case as conclusive of the issue that Williams was acting within the scope of his employment; (2) the court prejudicially erred in its voir dire of the jury; and (3) the court prejudicially erred in refusing plaintiff's instruction defining return to scope of employment after a deviation.

### Collateral Estoppel

█ A person who was a party to prior litigation may, in subsequent litigation with a different opponent, be bound by adverse final determinations of issues in the prior case by reason of the rule of collateral estoppel. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-813 [122 P.2d 892].) █ An adjudication by the Workers' Compensation Appeals Board is one which may be the basis for application of the doctrine. (*French* v. *Rishell* (1953) 40 Cal.2d 477 [254 P.2d 26] (res judicata).)

However, collateral estoppel is not an inflexible, universally applicable principle. Rather, "policy considerations" may limit its use where the limitation on relitigation underpinnings of the doctrine are outweighed by other factors. (*O'Connor* v. *O'Leary* (1967) 247 Cal.App.2d 646, 650 [56 Cal.Rptr. 1]; *People* v. *Seltzer* (1972) 25 Cal.App.3d Supp. 52, 54 [101 Cal.Rptr. 260].) ■ Here significant reasons of policy dictate that collateral estoppel not be applied.

A jury trial is not available to the employer in the workers' compensation case. If a determination of scope of employment in that proceeding is deemed collaterally to estop the employer from denying scope of employment when a third person asserts it as a basis for vicarious liability of the employer, the employer is denied his California constitutional right (art. I, § 7) to a jury trial on a key issue on which his liability turns.[2] (See *Beacon Theatres* v. *Westover* (1959) 359 U.S. 500 [3 L.Ed.2d 988, 79 S.Ct. 948].)

Collateral estoppel is by no means an unmixed blessing where it is potentially applicable to bind a party to a proceeding in future litigation with nonparties. Then the possibility of collateral estoppel changes the economic balance of litigation by creating a controversy in which the potential of loss to one party is much greater than the possible gain to the other. A defendant fearing the collateral consequences of the result of litigation in future proceedings with others may be forced to spend in defense sums all out of proportion to the amount in immediate question. He is required to take procedural steps at trial and on appellate review that otherwise would not be taken because of the economics involved. Inevitably, the adversary system requires that the plaintiff meet those actions and take his own to counter them. In the end, the collateral estoppel possibility can, and sometimes does, result in expense of litigation that threatens to exhaust the amount in immediate controversy.

The adverse effect of the potential of collateral estoppel upon the economic balance of civil litigation is particularly undesirable in workers' compensation proceedings. The policy of the workers' compensation law is to secure the quick and, where possible, certain

---

[2] *French* v. *Rishell, supra,* 40 Cal.2d 477, holds that a prior workers' compensation determination that a city fireman suffered a heart attack in the course of his employment conclusively determined the issue for the purpose of a later mandate action by the fireman against the city to establish his pension rights for a work-related disability. *French* is distinguished from the case at bench not only because it involves res judicata rather than collateral estoppel, but also by the fact that a jury trial is not available in mandate.

resolution of questions of coverage. Any doctrine which encourages delay in final resolution by the exercise of procedural and appellate steps is counter to the policy. The workers' compensation law, in stark contrast to the system of other personal injury litigation, is one of simplified procedure to reduce the call of legal expense upon the societal fund available for compensation for injury so that the maximum possible portion of the fund is available to compensate loss rather than the cost of determining controversies. The possibility of collateral estoppel consequences of a workers' compensation determination with its effect upon the economic balance of the controversy is counter to that policy also.

In sum, the effect upon the right to jury trial and the adverse consequences to the workers' compensation proceeding itself outweigh the benefit of collateral estoppel in avoiding relitigation between a party to the workers' compensation proceeding and a nonparty.

We thus conclude that the trial court correctly denied plaintiff's motion for directed verdict on the issue of vicarious liability.

### Jury Voir Dire

■ The primary purpose of voir dire of a jury panel is that of selection of a fair and impartial jury. It consists of examination of prospective jurors to determine if there is a ground of challenge for cause. (4 Witkin, Cal. Procedure (2d ed.), Trial, § 111.) ■ Here the voir dire conducted by the trial judge went far beyond that purpose. Had the same questions been asked by counsel, they would have constituted grossly improper attempts to indoctrinate the jury and precondition its determination of facts. (4 Witkin, *id.*, § 114.)

While preinstruction of prospective jurors by the trial judge is not erroneous and may in fact be desirable if the preinstruction is fair and accurate and, while conceivably the preinstruction process can sometimes be utilized in the context of judge voir dire of prospective jurors, here any preinstruction was neither fair nor complete. Prospective jurors were subjected to Socratic examination on issues of scope of employment and deviation but were misled as to the legal principles applicable to the determination of return to scope of employment after a deviation. As to that issue, the prospective jurors were told that Williams was acting within the scope of his employment if he "had in fact returned to the scope of his employment, he was doing things for the benefit of his employer, it was within the scope of his employment, employer's

instructions, he was following the duties assigned to him at the time of the accident. . . ." That conjunctive statement erroneously stated the law. In context, it was enough to place Williams within the scope of his employment if, after deviation from it, he "was doing things for the benefit of his employer" absent specific employer instructions.

Thus, the trial court erred in its conduct of voir dire examination of prospective jurors.

### Refused Jury Instruction

■ A party is entitled to a jury fully and completely instructed on the law applicable to the facts presented to it. (*Hardin* v. *Elvitsky* (1965) 232 Cal.App.2d 357, 372 [42 Cal.Rptr. 748].) Here plaintiff was denied an instruction proposed by her that was necessary if the jury was to be fully informed of the principles of law applicable to the key factual issue presented. While the instruction proposed by plaintiff is not a model of what an instruction on the law of return to scope of employment should be, it nevertheless encompassed the elements of intent and spacial and temporal relationship that govern the ultimate determination. The remainder of the proposed instruction, while unnecessary to a proper statement of the law, is neither incorrect nor misleading in the context of the case at bench. In those circumstances, the trial court was obligated either to give the proposed instruction or to modify it to eliminate the surplusage.

### Prejudice

The combination of error in voir dire and error in refusing the jury instruction proposed by plaintiff was prejudicial. On voir dire, the prospective jurors were exposed to an erroneous statement of the legal principles applicable to return to scope of employment after a deviation. The jury instructions themselves omitted a salient principle necessary to an intelligent application of law to the evidence. The jury's confusion is manifest by its unanswered question to the trial judge.

### Disposition

The judgment is reversed.

Lillie, Acting P. J., concurring.

**HANSON, J.**—Concurring and Dissenting.

I concur in the majority opinion's conclusion that the trial court correctly denied plaintiff's motion for directed verdict on the issue of vicarious liability which was predicated upon the theory that the Workers' Compensation Appeals Board finding that Williams was within the scope of employment collaterally estopped the employer Trans Globe from relitigating that issue at the trial.

In addition to the policy reasons upon which the majority bases its conclusion as to this issue, the record reflects that the trial in the instant case commenced on October 8, 1974. However, Trans Globe filed a petition for hearing with the California Supreme Court and therefore the Court of Appeal decision did not become final until December 1974, well after the conclusion of the trial.

"Under California law the pendency of an appeal from a judgment prevents its operation as res judicata[1][citations] and an appeal is pending until decided or dismissed, unless the judgment is sooner satisfied. (Code Civ. Proc., § 1049.)" (*Wood* v. *Herson* (1974) 39 Cal.App.3d 737, 748.) Plaintiff-appellant did not enter a plea in abatement or request a continuance to permit this decision to become final. On this basis alone, the trial court properly denied the motion for directed verdict.

The general rule of res judicata is that a prior final judgment operates as a conclusive adjudication as to all issues only with respect to a subsequent suit between the same parties on the same cause of action; where the second suit is on a different cause of action or between different parties, it is conclusive under the doctrine of collateral estoppel only as to issues actually litigated. (See *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758]; *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 633 [86 Cal.Rptr. 198].)

As the court points out in *Eichler Homes, Inc.* v. *Anderson* (1970) 9 Cal.App.3d 224, at page 234 [87 Cal.Rptr. 893]: "If 'anything is left to

---

[1]In one aspect the doctrine of res judicata precludes parties or their privies from relitigating a cause that has been finally determined by a court of competent jurisdiction; in a second aspect, known as collateral estoppel, any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if the issue is involved in a subsequent lawsuit on a different cause of action; whereas, the claim of collateral estoppel is concerned with the conclusiveness of a prior determination of a particular issue. (*Topanga Corp.* v. *Gentile* (1963) 219 Cal.App.2d 274, 278 [33 Cal.Rptr. 56]; see also *Rynsburger* v. *Dairymen's Fertilizer Coop. Inc.* (1968) 266 Cal.App.2d 269 [72 Cal.Rptr. 102].)

conjecture as to what was necessarily involved and decided' there can be no collateral estoppel (*Talman* v. *Talman,* 229 Cal.App.2d 39, 42 [39 Cal.Rptr. 683]; *Stout* v. *Pearson, supra,* 180 Cal.App.2d 211, 216; *Blumenthal* v. *Maryland Cas. Co.,* 119 Cal.App. 563, 566-567 [6 P.2d 965]); ' " 'Every estoppel must be certain to every intent, and not to be taken by argument or inference' " ' (*Stout* v. *Pearson, supra,* at p. 216). And as said in *Graves* v. *Hebbron,* 125 Cal. 400, 406 [58 P. 12], 'it must appear . . . that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, the whole subject matter of the action will be at large and open to new contention, . . .' "

Clearly, the parties were different in the case before this court; moreover, it does not appear that the issues litigated in the case of *Williams* v. *Workmen's Comp. Appeals Bd., supra,* 41 Cal.App.3d 937, were identical with those presented herein. The rationale underlying a determination that an employee did not so fully abandon his employment that his employer should be relieved from statutory liability differs from the determination of his employer's expanded vicarious liability for injuries caused to third parties by an employee. Moreover, court and counsel in the present case included the issue of Trans Globe's liability among those to be determined by the jury. Plaintiff's attorney did not enter a plea in abatement or request a continuance in reliance upon the outcome of the workmen's compensation case. Pendency of another action constitutes valid ground for a continuance (*Robinson* v. *El Centro Grain Co.* (1933) 133 Cal.App. 567 [24 P.2d 554]) or a plea in abatement (*Simmons* v. *Superior Court* (1950) 96 Cal.App.2d 119 [214 P.2d 844, 19 A.L.R.2d 288]). Possibly in view of his uncertainty as to the outcome of the case on appeal, counsel failed to defer the trial proceedings, and the issue was fully explored and litigated there.

Despite his position that the appellate decision gave rise to a collateral estoppel, it was not until the conclusion of all the evidence that plaintiff's counsel took any formal action on that ground; he then moved for a directed verdict. While he might have been entitled to a continuance, he was not entitled to a directed verdict.

Moreover, as the trial court declared when counsel first asserted his position on the effect of the appellate decision during pretrial proceedings, the issue of the employer's common law liability for negligent or reckless driving by its employee was properly presented to the jury. The jury determined on the facts that Trans Globe was not liable for

plaintiff-appellant Kelly's injuries. To ask to reverse in effect asks for a determination that the trial was a nullity as to one of the principal issues therein litigated, which would be unreasonable and unrealistic since plaintiff's counsel did not timely raise the issue during the trial.

I dissent from the majority opinion's conclusion that the combination of the manner in which the trial judge conducted voir dire and his refusal to instruct the jury on plaintiff's counsel-proffered instruction constituted prejudicial error.

A more detailed treatment of the facts appears warranted. The record reflects that Williams had been working for Trans Globe about seven weeks at the time of the accident. About 12 o'clock noon on that day he reported to the Irvine office of his employer Trans Globe and was instructed by Joan Cook, office manager, to deliver certain tickets to and collect a check for the tickets from an office in Santa Ana and then to go to the Sierra Madre office of Trans Globe to pick up a book and then return to Orange County to deliver airline tickets to the Medical-Surgical building at Irvine and to return the check and book to Trans Globe. Mrs. Cook provided directions to Williams before he left, indicating the precise routes he was to take from Orange County to the Sierra Madre travel agency. Williams' compensation was on an hourly basis plus mileage for the use of his car.

Mrs. Cook testified that she told Williams "he was to be back to the office by three o'clock and no later"; that the reason he was to be back at 3 p.m. that day was because she was leaving on a business trip at 4:30 p.m. to attend a seminar and wanted to make sure she had the check back and needed the book for the seminar.

Williams testified that Mrs. Cook did not specify the exact time to return to the Trans Globe office in Orange County but that he knew that the policy was to return the check that same day; that "She (Mrs. Cook) stressed the fact she wanted the book back to her." He further knew that the doctors' offices (where he was to deliver the tickets) and Trans Globe office in Orange County (where he was to return the check and the book) officially closed at 5:30 p.m.; that he actually left the Orange County area about 1 p.m. and following directions given by Mrs. Cook and after picking up the book in Sierra Madre while he was trying to find a route back to Orange County, he picked up a hitchhiker[2] and took him to his

---

[2]Mrs. Cook testified that Williams was instructed never to pick up or carry passengers in his vehicle while he was engaged in his employment for Trans Globe.

van which was inoperative; that since the van would not start, he drove the hitchhiker to his home where he stayed for a while talking and had refreshments; that he intended to return to Orange County from that location but was lost and confused and looking for the Pasadena Freeway; he (Williams) never stopped to ask directions at a filling station nor did he telephone his employer Trans Globe for directions or to tell them he was lost.

Witness Frank E. Sarver, a motorcycle police officer for the City of Pasadena, testified that he first observed Williams at 5 p.m. on January 24, 1973, driving his Toyota eastbound on Foothill Boulevard approaching Sierra Madre Boulevard where Williams ran a red light at that intersection; that Williams proceeded to the next block (Altadena) and stopped in preparation of a left-hand turn to go northbound on Altadena Avenue; but he (Officer Sarver) pulled up behind him and activated his red light and horn; that Williams had a gas station road map spread out in front of him; that Williams looked in the rear view mirror at the officer, put down the map as the light turned green and instead of making a left turn, "veered to the right and into No. 1 lane eastbound—swung across the double yellow line" and "proceeded eastbound in the No. 1 lane westbound"; the officer pursued Williams with siren activated; that he pursued Williams who was traveling "in excess of 90 miles an hour" to point of the collision with plaintiff's vehicle at the intersection of Foothill Boulevard and Sierra Madre Villa.

Witness Van R. Downey, police officer with the City of Pasadena, testified that 30 to 45 minutes after the accident he had the following conversation with Williams in the emergency room at Huntington Memorial Hospital: "Q. Did you speak to Mr. Williams first or did he speak to you first? [¶] A. No, he spoke to me first. [¶] Q. What did he say? [¶] A. He looked up at me and said that he was sorry he didn't stop for me. [¶] Q. Did you say anything to him at that time? [¶] A. I asked him where he was going. [¶] Q. What did Mr. Williams tell you? [¶] A. That he was going to Ontario to see his girl friend and that he was lost."

Williams testified he did not remember making that statement to the officer.

Turning to plaintiff's contention that the trial court's voir dire of the prospective jurors constituted prejudicial error, as counsel observed in his opening brief, "the court focused the jury's attention on the thorniest factual and legal issues in the case—whether there was a 'substantial

deviation' and a return to the course of employment." The court presented to the jury several hypothetical situations illustrative of what might or might not constitute substantial deviation. Plaintiff's counsel made no objection during the first day. The morning of the second day he expressed an objection in chambers and the court asked what type of hypothetical situation *he* might wish to have presented; counsel produced none, so none was given. Nonetheless, the trial court further instructed the jury that day on the aspect of the law which plaintiff's counsel had requested. He told the jury that one of the issues would be whether Williams, after a deviation from employment, had returned to his employer's business. The trial court enjoys considerable latitude in the area of juror selection and voir dire. (See *Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878 [64 Cal.Rptr. 655].)

Turning next to plaintiff's assertion that the trial court committed prejudicial error in refusing to give her special jury instruction No. 3, the instruction in question, entitled "Principal and Agent," reads as follows: "Where an agent temporarily abandons his principal's service, principal again becomes liable for agent's acts when agent resumes his duties, and the re-entry is not affected merely by agent's mental attitude, but there must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged. [Citing *Cain* v. *Marquez* (1939) 31 Cal.App.2d 430 (88 P.2d 200).]"

I would hold that no prejudicial error was committed in refusal of the above instruction because "[a] party is not entitled to have the jury instructed in any particular language so long as the instructions given correctly state the law. (*George* v. *Matthews,* 175 Cal.App.2d 680, 684 [346 P.2d 863].) When an instruction requested by an appellant is not materially different from those given, it is not error to refuse those proposed by appellant. (*Wood* v. *Alves Service Transportation, Inc.,* 191 Cal.App.2d 723, 733 [13 Cal.Rptr. 114]; *Johnston* v. *Brother,* 190 Cal.App.2d 464, 474 [12 Cal.Rptr. 23].)" (*Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 643 [35 Cal.Rptr. 11].)

The court below adequately instructed the jury by giving BAJI No. 13.01 (Scope of Authority—Meaning)[3] and BAJI No. 13.02 (When Agent

---

[3]BAJI No. 13.01 reads: "It is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority or employment. Such conduct is within the scope of his authority or employment if it occurs while the agent is engaged in the duties which he was employed to perform and relates to those duties. Conduct for the benefit of the principal which is incidental to,

Attends to Personal Affairs, as modified by the court).[4]

Although there may be semantic differences in language between the language preceding the first "and" in the proffered instruction and BAJI No. 13.02 (as modified), the subject matter was adequately covered in the latter instruction.

Plaintiff focuses on that portion of her proffered instruction following the first "and" pertaining to intent, time and space as factors to be considered as guidelines.

The 1939 case of *Cain* v. *Marquez, supra,* 31 Cal.App.2d 430, cited as authority for the proffered instruction, was a nonsuit case. The requested instruction was apparently lifted from the end of the first paragraph on page 442. The entire paragraph, commencing on page 441, states: "It seems to be firmly established that a master is liable for the result of a servant's negligence when the servant is acting in the course of his employment. It is not the rule itself but its application that ever causes a doubt. The servant may be acting for himself. He may be engaged in an independent errand of his own. He may abandon his master's service permanently or temporarily. While still doing his master's work, he may be also serving a purpose of his own. He may be performing his master's work but in a forbidden manner. No formula may be stated that will enable us to solve the problem whether at a particular moment a particular servant is engaged in his master's business. We recognize that the precise facts before the court will vary the result. We realize that differences of degree may produce unlike effects. But whatever the facts, the answer depends upon a consideration of what the servant was doing and why, when, where and how he was doing it. He may be so distant from the proper scene of his labor, or he may have left his work for such a length of time, as to evidence a relinquishment of his employment. Or the circumstances may have a more doubtful meaning. That the servant

customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's authority or employment."

[4]BAJI No. 13.02 reads: "When an agent is acting on his principal's behalf and within the scope of his authority, if while so engaged, he also and incidentally attends to some matter strictly personal to himself, his doing so does not break the agency relation so as to release the principal from responsibility for the agent's conduct.

"On the other hand, when an agent departs or substantially deviates from the business or service of his principal, and pursues some activity or object not for his principal and not reasonably embraced within his employment, the principal is not responsible for anything done or not done, in such activity, or deviation.

"The employment relationship is suspended from the time the employee leaves the scope of his employment until he returns." (As modified by the court.)

is where he would not be had he obeyed his master's orders in itself is immaterial, except as it may tend to show a permanent or temporary abandonment of his master's service. Should there be such a temporary abandonment the master again becomes liable for the servant's acts when the latter once more begins to act in his business. Such a reentry is not affected merely by the mental attitude of the servant. There must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged. No hard-and-fast rule on the subject either of space or time can be applied. He may choose a different way back."

Clearly in such deviation from scope of employment cases as herein involved no "hard-and-fast" rule can be applied, and there is no BAJI instruction on that issue. "The basic philosophy of pattern jury instructions is that the judge should limit his responsibility to communicating the applicable law to the jury and leave advocacy to counsel who alone may argue the application of the law to the facts in evidence." (BAJI (5th ed.) p. IX.)

Here, the over 900 pages of the reporter's transcript include the closing arguments. The record reflects that each counsel pinpointed the critical issue as between plaintiff and Trans Globe. Plaintiff's counsel stated during closing argument: "The issue really is, at the time the accident occurred was he furthering his employer's business, was he returning to the Orange County area to deliver those tickets, whether that day or the following morning before he reported in to take up his next assignment." Defense counsel for Trans Globe stated: "And that is the key question in this case. At the time of the accident was Howard Williams in the scope of his employment, which leads to the basic issue, did Howard Williams return to the scope of his employment as of the time of this accident." Both counsel then vigorously argued the direct and indirect evidence bearing on that issue which of necessity encompassed the intent, time and space factors which are obviously inherent in a factual determination of such an issue.

Moreover, failure to give the latter part of the proffered instruction which was refused would not be prejudicial in any event, being more favorable to the defense under the facts of the case at bench.

The record is clear that driver Williams testified in court that after leaving the hitchhiker's home he intended to return to Orange County but was confused and lost. Plaintiff's counsel vigorously argued this

point. The proffered instruction says "the re-entry is not affected merely by agent's mental attitude"; this enfeebles the weight of Williams' testimony as to his intent. The proffered instruction continued, "but there must be that attitude coupled with a reasonable connection in time and space with the work in which he should be engaged." BAJI No. 13.02 refers to activity "not reasonably embraced within his employment." Here, although witness Cook testified that Williams was to return to Orange County by 3 p.m., the evidence is clear that Williams knew he should return the check and book to his employer in Orange County the same day and that the offices would be officially closed after 5:30 p.m. Taking into consideration that the accident occurred at 5 p.m., miles away, with Williams in Pasadena traveling 90 miles an hour in the general direction of Ontario not Orange County, and two hours after the time Mrs. Cook testified he was instructed to return, pursued by the police, in conjunction with Officer Downey's testimony that about a half-hour after the accident Williams told him "that he [Williams] was going to Ontario to see his girl friend and that he was lost," it is obvious that failure to give that portion of the proffered instruction pertaining to time and space factors was not prejudicial to plaintiff but would have been more favorable to defendant Trans Globe as indicating neither the intent nor capacity to be in Orange County before the Trans Globe office closed.

The jury did not ask for additional instructions on "substantial deviation" and "intention," but to *re-read* portions of the law that would or might pertain to those matters. The trial judge re-read BAJI No. 13.01 and BAJI No. 13.02 (as modified) twice and cleared up the last word "returns"[5] as referring to "back within the scope of his employment." Since apparently plaintiff's attorney was not present, it would have been improper to elucidate further.

[5]"THE COURT: . . . Let the record show I have received a communication from Mr. E. R. Fernandez.

"I take it, Mr. Fernandez, you have been selected as foreman of the jury; is that correct?

"THE FOREMAN: That is correct, Your Honor.

"THE COURT: The communication I have, apparently signed by Mr. Fernandez, is this:

" 'Would like to have any portion of law re-read that would or might cover:

" '1. Substantial deviation.

" '2. Intention.'

"I will re-read one of the instructions having to do with scope of authority and referring to substantial deviation. There were no instructions having to do with intention and I cannot re-read them. I will also read preliminary instruction having to do with the meaning of the express scope of authority, which reads:

Finally, article VI, section 13, of the California Constitution provides in part: "No judgment shall be set aside, . . . in any cause, on the ground of misdirection of the jury, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

After examining the entire cause and evidence and the instructions as a whole, including a review of the superior court file and exhibits pursuant to rule 12(a), California Rules of Court, I cannot say the manner in which the trial court conducted voir dire and/or its refusal to give plaintiff's special instruction No. 3 constituted prejudicial error or have resulted in a miscarriage of justice.

[BAJI 13.01 and 13.02 reread by court.]

"I believe that is the best I can do, in response to the question that you have addressed to me.

"Is there anything further, Mr. Fernandez?

"THE FOREMAN: Not at this time.

"JUROR NUMBER 11: Your Honor, I would like to know if it was possible, none of us can write as rapidly as you can read, and is it possible to have that typed and sent in to the room so we can—

"THE COURT: Not without Mr. Stanley or someone from his office being here and consenting to it.

"Are you referring to the last instruction about deviation?

"JUROR NUMBER 11: Yes.

"THE COURT: Let me read it again, then, very slowly.

[BAJI 13.02 as modified then reread by court.]

". . . . . . . . . . . . . . . . . . .

"JUROR NUMBER 8: Until he returns. Does he have to actually return to where he started or does he just have to be doing something that goes along with the job?

"THE COURT: I'm sorry. I can't answer that question. You are going to have to conclude factually whether or not, from all the facts, you can conclude he was back within the scope of his employment.

"THE FOREMAN: Prior to what you just read now, when you first read to us, you read something about doing something to further his company's—could you read that sentence over?

"THE COURT: Let me read again the definition of scope of authority.

[Court reread BAJI 13.01.]

"Does that answer your question?

"JUROR NUMBER 3: The word after "reasonable," sir?

"THE COURT: (Reading:)

" '. . . or reasonably necessary for the performance of . . . .'

"JUROR NUMBER 3: Thank you.

"THE COURT: (Reading:)

" '. . . an authorized act is within the scope of the agent's authority or employment.'

"JUROR NUMBER 3: Thank you.

"THE COURT: Yes, ma'am?

"JUROR NUMBER 12: You said 'until he returns.' Does that encompass until he starts to return?

"THE FOREMAN: Can't answer that.

"THE COURT: I can't help you."

Here, the jury trial lasted 10 days in which all litigants were represented by competent counsel who vigorously represented their clients and which was presided over by an experienced trial judge. Plaintiff was entitled to a fair trial, not a perfect trial. She has had a fair trial and her full day in court.

I would affirm the judgment.

Appellant's petition for a hearing by the Supreme Court was denied September 15, 1976.