Filed 8/3/23  P. v. Partida CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DANIEL PARTIDA,<br><br>        Defendant and Appellant. | B321439<br><br>(Los Angeles County<br>Super. Ct. No. BA043905) |

        APPEAL from an order of the Superior Court of Los Angeles County, Shelly B. Torrealba, Judge.  Reversed and remanded.

        Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Daniel Partida (defendant) appeals the summary denial of his petition for resentencing under Penal Code section 1172.6 (former section 1170.95).[1]  We conclude that the trial court erred, and remand this case for an evidentiary hearing.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Underlying crime*

In January 1991, the 39th Street gang and the Street Saints gang were rivals.  Defendant was a member of the Street Saints gang.  One night in January 1991, defendant drove two other members of the Street Saints gang into territory claimed by the 39th Street gang, and one of defendant's passengers opened fire on a group of men standing on a street corner.  The shooter hit one of the men in the back of the head, killing him.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). For the sake of simplicity, we will refer to the section by its new numbering only.

**B.** *Underlying prosecution*

1. *The charges*

The People charged defendant with murder (§ 187, subd. (a)), and further alleged that he was armed with a firearm (§ 12022, subd. (a)(1)).[2]

2. *The trial*

The matter proceeded to a four-day trial in May 1992.

a. Instructions during voir dire

During voir dire, the trial court instructed the jury that defendant could be liable for murder for aiding and abetting his cohorts in committing some lesser crime, if the natural and probable consequence of that lesser crime was murder.[3]

b. Closing arguments

During closing argument, the prosecutor (in her opening argument) and defense counsel sparred over whether defendant had personally acted with the intent to kill. In response to defense counsel's argument, the prosecutor asked the court for permission to argue that defendant "d[id] not need to have an intent" and could still be liable for murder "as long as he aids and

---

[2] The People also charged defendant with second degree robbery (§ 211) committed on a different date, as well as alleged that defendant had furnished his cohorts with firearms before the charged murder (§ 12022.4). The People subsequently dismissed the robbery charge and the furnishing allegation.

[3] Although the voir dire portion of the trial was not transcribed, the trial court later indicated that the natural and probable consequences theory was "certainly something I instructed the jury on during voir dire." The parties have not disputed the accuracy of the trial court's self-report, and we have no basis to question its accuracy.

abets the commission of . . . the drive-by shooting" and as long as murder is "reasonable and foreseeable" from such a shooting. The prosecutor acknowledged that it was an "oversight" not to ask the trial court to instruct the jury on the natural and probable consequences theory that supported the argument she wished to make, but sought permission to argue that theory anyway because it was "the present state of the law." Defendant objected to giving any instruction on the natural and probable consequences theory of liability, but the court said it would ruminate over whether to give that instruction and would in the meantime permit the prosecutor to argue that theory. The prosecutor thereafter argued that the People did not "have to prove the defendant guilty . . . as an aider and abettor [to the crime of murder]" and did not "have to prove the defendant intended to kill anyone" because "[t]hat is not the law"; instead, the People merely had to prove that defendant aided and abetted a "drive-by shooting[]" and that death "is a reasonably foreseeable consequence of that conduct." The prosecutor concluded by saying, "[d]on't look at this case and try to find where the evidence is to prove that the defendant intended to kill anyone" because "[t]here is no evidence that the defendant on that night intended to kill anyone . . . ."

        c.     Closing instructions

Following the end of closing arguments, the trial court instructed the jury that (1) defendant could be liable for murder if he was (a) the actual killer, or (b) directly aided and abetted the actual killer, and (2) the jurors must "accept and follow the law" as stated by the court, even if any statement of law made by the attorneys conflicted with the court's instructions. The court did not instruct the jury on the natural and probable consequences

4

theory or the felony-murder theory of liability, but it also did not acknowledge that it had given a natural and probable consequences instruction during voir dire, correct that instruction, or tell the jury that they should only follow the instructions that the jurors received at the close of the trial.

### d. Verdict

The jury found defendant guilty of second degree murder. It found "not true" the allegation that defendant was personally armed with a firearm.

### e. Sentence

The trial court sentenced defendant to prison for 15 years to life.

### 3. *Appeal*

We affirmed defendant's conviction and sentence. (*People v. Partida* (Sept. 8, 1994, B071301) [nonpub. opn.].)

## II. Procedural Background

In November 2019, defendant filed a petition seeking resentencing under section 1172.6. The trial court appointed counsel. Following further briefing and a hearing, the trial court summarily denied defendant's petition. Specifically, the court ruled that defendant was ineligible for relief under section 1172.6 as a matter of law because (1) the court erroneously believed that the jury had never been instructed on the natural and probable consequences (or felony-murder) theories of liability that give rise to relief under section 1172.6, and (2) the prosecutor's *argument* on a natural and probable consequences theory could not trump the absence of any *instruction* on that theory.

Defendant filed this timely appeal.

5

## DISCUSSION

A person is entitled to relief under section 1172.6 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder[ or] murder under the natural and probable consequences doctrine," (2) he "was convicted of murder," and (3) he "could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).) In January 2019, our Legislature amended section 188 to provide that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his . . . participation in a crime." (§ 188, subd. (a)(3).)

In assessing whether a defendant seeking relief under section 1172.6 has made out a prima facie case warranting an evidentiary hearing, a trial court must take the petition's allegations as true and ask ""whether the petitioner would be entitled to relief if [those] allegations were proved.""" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) "However, if the record, including the court's own documents [from the record of conviction], "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner.""" (*Ibid.*) Then, if the defendant has made the prima facie showing (that is, if the record of conviction does not establish ineligibility for relief as a matter of law), the court must hold an evidentiary hearing to determine whether the defendant is eligible for resentencing in accordance with current law. (*Id.* at pp. 960, 971; § 1172.6, subds. (c) & (d).)

6

Whether the trial court erred in summarily denying defendant's section 1172.6 petition in this case turns, as a threshold matter, on whether the trial court instructed the jury on either of the now-invalid theories of liability (that is, the felony-murder theory or the natural and probable consequences theory). If the court instructed on either theory, then defendant has met the requirements of section 1172.6, subdivision (a), and the trial court erred in denying his petition without first holding an evidentiary hearing. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 20 (*Lopez*); *People v. Langi* (2022) 73 Cal.App.5th 972, 983.) Conversely, if the court did *not* instruct on either theory, then defendant is ineligible for relief as a matter of law and it was proper to summarily deny his petition. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

Because our conclusion rests on the application of the law to undisputed facts, we independently conclude that the trial court erred in summarily denying defendant's petition. (See *Lopez*, *supra*, 78 Cal.App.5th at p. 14; *Tsasu LLC v. U.S Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 715.) We "presume" that juries "understand and follow" instructions given by the court. (*People v. Pearson* (2013) 56 Cal.4th 393, 414 (*Pearson*); *People v. Yeoman* (2003) 31 Cal.4th 93, 139; *People v. Holt* (1997) 15 Cal.4th 619, 662.) Although it is undisputed that the trial court did not instruct the jury on the felony-murder theory, it is also undisputed that the trial court *did* instruct the jury on the natural and probable consequences theory. (*Kelly v. Trans Globe Travel Bureau, Inc.* (1976) 60 Cal.App.3d 195, 203-204 (*Kelly*) [instructions given during voir dire to be read in conjunction with closing instructions]; cf. *People v. Seumanu* (2015) 61 Cal.4th 1293, 1358-1359 [trial court's "informal[]" "comments" during voir

dire, when trial court told the jury that they would "be given formal instructions" later, do not infect subsequent penalty phase instructions]; *People v. Romero* (2008) 44 Cal.4th 386, 423 [same].) Although the natural and probable consequences instruction was not given as part of the final instructions, the court never told the jury to disregard all prior instructions and nothing in the court's final instructions contradicted the court's earlier instruction that defendant could be liable for murder on a natural and probable consequences theory. (*Kelly*, at pp. 203-204 [finding error when instruction given during voir dire included "erroneous statement" of the law not later corrected]; *People v. Johnson* (2004) 119 Cal.App.4th 976, 979, 984-986 [reversal required due to erroneous jury instruction on the definition of reasonable doubt given during voir dire, even when court attempted to correct instruction at close of trial]; cf. *Pearson*, at pp. 414-415 [any error in earlier-given instructions was harmless where trial court instructed jury only to consider closing instructions].) What is more, this was not a lengthy trial where the time between the voir dire instruction and the final instructions was so great that we would expect the jury not to have the voir dire-given instructions firmly in mind: Here, voir dire occurred on a Tuesday (May 26, 1992), and the final instructions were given on a Friday (May 29, 1992). (Cf. *People v. Claxton* (1982) 129 Cal.App.3d 638, 668-669 [nine-day gap; court's "'explanation'" of law during voir dire dissipated when correct instruction given during closing instructions], overruled on other grounds in *People v. Fuentes* (1998) 61 Cal.App.4th 956, 967 & fn. 10; *People v. Silveria* (2020) 10 Cal.5th 195, 305-306 [same, but with four-month gap between erroneous voir dire instruction and correct closing instruction].)

Because the trial court instructed on a now-invalid theory, we must reverse the ruling summarily denying defendant's section 1172.6 petition and remand for an evidentiary hearing on the petition, where it will be the People's burden to independently prove to the trial court that defendant is guilty beyond a reasonable doubt on any of the still-valid theories of liability for murder.  (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

In light of our reasoning, we have no occasion to reach the parties' alternative arguments or defendant's further argument that his petition should have been heard by the same judge who tried his case.

## DISPOSITION

The order is reversed, and the matter remanded for an evidentiary hearing.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

9