### 18722

Mrs. Gene G. ZEIGLER, Respondent, v. S. C. LAW ENFORCEMENT DIVISION and State Workmen's Compensation Fund, Appellants

(157 S. E. (2d) 598)

*Messrs. Daniel R. McLeod, Attorney General,* and *Law, Kirkland, Aaron & Alley,* of Columbia, *for Appellants,*

328

*Messrs, Whaley, McCutchen, Blanton & Richardson,* of Columbia, *for Respondent,* 

November 3, 1967.

LEWIS, Justice.

On June 20, 1964, John Byrd Zeigler, an agent of the South Carolina Law Enforcement Division, died from pistol shot wounds inflicted by a fellow agent, George H. Fender, Jr., during an altercation between the two men. The Industrial Commission made an award to Zeigler's widow for death benefits under the Workmen's Compensation Act, upon factual findings that Zeigler's death resulted from an accident arising out of and in the course of his employment and was not occasioned by any wilful intent on his part to injure another. The circuit judge affirmed the award and this appeal followed.

Under our view of the record, all issues on appeal are resolved by a determination of whether, under the facts, recovery is barred as a matter of law by Section 72-156 of

the 1962 Code of Laws, which denies the right to Workmen's Compensation benefits "if the injury or death was occasioned * * * by the wilful intention of the employee to injure or kill * * * another." For, even though the assault upon Zeigler, the employee, may have arisen out of and in the course of the employment, still the right to benefits is barred where the acts of the employee are such as to come within the legislative exception of wilful intent to injure.

The foregoing section constitutes an exception to the general principle that fault has no bearing upon an employee's right to recover Workmen's Compensation benefits, and finds application only in those cases where it is shown that the acts of the employee are so serious and aggravated as to evince a wilful intent to injure. It is a defense and the burden of establishing it rests upon the one asserting it. Section 72-158, 1962 Code of Laws.

We have held that the term "wilful intention," as used in the statute, means a deliberate or formed intention. *Reeves v. Carolina Foundry & Machine Works,* 194 S. C. S. C. 403, 9 S. E. (2d) 919.

The Commission has found that the employee's death was not occasioned by any wilful intent on his part to injure. We are bound by such finding on appeal if there is any evidence to support it. The issue becomes one of law however for the court to decide where the evidence gives rise to but one reasonable inference.

Both, Zeigler, the deceased, and Fender, his fellow employee, were employed as agents of the South Carolina Law Enforcement Division which has its headquarters near Columbia, South Carolina. Deceased resided at headquarters where rooms were maintained for occupancy by some of the agents. Fender was at the time in question, and had been for several days prior thereto, in charge of headquarters and in such capacity had supervision over the assignment of personnel. One of the rules of the Division required that the officer in charge of headquarters have information at

all times as to the whereabouts of the law enforcement agents.

On Saturday, June 20, 1964, about 4 p. m., deceased and Fender were together at headquarters and engaged in a heated argument concerning the alleged making of long distance calls and the inability of Fender to contact deceased on the two previous nights. The argument became so heated until a Lieutenant Faulk, who was present, stepped between them and told them to "cool off." They then cursed each other, Fender calling deceased a s. o. b. and deceased returning the epithet. Fender then turned to leave and, as he was walking away, deceased called him a "yellow s. o. b."

After the initial argument, they separated, Fender going upstairs in the building to attend to some personal matters. After Fender walked away, Lieutenant Faulk took deceased by the arm and walked with him to the lobby at the front entrance to the building and back to the side entrance where deceased and Fender had just separated. When they reached the side entrance Lieutenant Faulk advised deceased to "take a walk and cool off." As deceased started down the steps toward the side entrance, Fender came down from upstairs and the argument started again, resulting in the side door being shoved open violently by one of them and the two walking out of the building. When the argument between the two was renewed, Faulk was surprised because he thought that the difficulty had ended. When they reached the outside Lieutenant Faulk heard a "scuffle" or "commotion" and then a shot. Before he could get to the outside, other shots were fired. When Faulk reached a point where he could see, he saw deceased in a crouched position, holding onto a column at the entrance way, with his pistol in his hand and pulling the trigger. He did not see Fender at the time.

The record shows that both Fender and deceased fired their pistols at each other when they reached the outside and that both were wounded, deceased fatally. There is no evidence of any previous animosity between them.

The only witness who saw the shooting, other than Fender, was one Thomason, a prisoner trusty, who testified that he was standing about 75 to 100 yards away, and saw the two men come out of the building; Fender first, and deceased following. He further stated in effect that after they came out of the building Fender turned facing deceased, at which time deceased fired first, with Fender then pulling his gun, and a succession of shots followed.

The testimony of Fender was to the effect that the deceased invited him to the pistol range to settle the dispute, which he refused to accept; and that, when they went outside the building, the deceased fired the first shot, after which Fender returned the fire in self defense.

While the testimony is in some respects conflicting the material facts are not in dispute. We think that the only reasonable inference from the testimony is that the act of the deceased in engaging in the final altercation with his fellow officer, both of whom were armed, was not impulsive or instinctive, but deliberate, and resulted from his voluntary acquiescence in the settlement of the dispute by violence. The circumstances were such that the parties were charged with the knowledge and reasonable expectation that going outside the building to further pursue the altercation would result in violence and serious injury. The fatal altercation was voluntarily entered into, and the conduct of the deceased was of such a grave or serious nature as to evidence a wilful intent on his part to injure his fellow employee, thereby barring any right to benefits under the Workmen's Compensation Act.

The Commission apparently based its award upon a finding that the deceased was not the aggressor. Such finding however is without support in the record.

Reversed and remanded for entry of judgment in favor of defendants.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.