## 20363

Carl KINSEY, Appellant, v. CHAMPION AMERICAN SERVICE CENTER and Aetna Insurance Company, Respondents.

(232 S. E. (2d) 720)

*Thomas Kemmerlin, Jr., Esq.,* of Columbia, *for Appellant,*

*Samuel F. Painter, Esq.,* of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, *for Respondents,*

February 10, 1977.

Ness, Justice:

This is an appeal pursuant to the Workmen's Compensation Act, Section 72-1, *et seq.,* of the 1962 Code. The Single Commissioner, Full Commission, and Circuit Court resolved all issues against the claimant-appellant Kinsey. Our scope of review is limited to whether there is any competent evidence to support the findings made by the Commission. *Robinson v. City of Cayce,* 265 S. C. 441, 219 S. E. (2d) 835 (1975).

Kinsey was employed as an attendant at a gasoline station. He was injured by a co-worker named Brown when the two men were involved in an altercation on the employer's premises. The Commission factually found that Kinsey was the aggressor in the fight; he had been dismissed prior to the fight; and, that he was drinking on the day in question.

The Commission discounted the appellant's version of the fight due to the apparent inconsistencies in his testimony. However, considering only the versions of Brown (the other employee) and the employer, the following scenario of the events leading to the injury is established.

The appellant and Brown had a history of personal conflicts due to a disagreement about Brown's authority to supervise or instruct appellant as to his employment activities. On the day in question, the employer, after discovering that appellant had been drinking, told appellant that he "thought he ought to go home." The employer was cognizant of the fact that appellant did not leave. Thereafter Brown instructed appellant to wait on some cars. Appellant cursed and drew back a tire iron whereupon Brown threw a knife at the appellant who then walked away. When ap-

pellant returned, Brown "thought" he heard him mumble something so he threw a hammer at the appellant, again missing his target. The employer retrieved the hammer and instructed appellant to sit in the front office if he was not going to go home. Brown, "before [he] realized anything," was on the ground fighting the appellant. The appellant was seriously injured.

The Commission's basic finding was bottomed upon the inappropriately denominated "aggressor defense." The Workmen's Compensation Act has eliminated all issues and degrees of negligence. There is no statutory defense labeled aggressor defense. The only relevant statutory provision which, under certain well delineated circumstances, supports an aggressor defense is S. C. Code § 72-156. It reads:

"No compensation shall be payable if the injury or death was occasioned . . . by the willful intention of the employee to injure or kill himself or another."

The leading case in which the quoted section was held as a matter of law to be a defense is *Zeigler v. S. C. Law Enforcement Division,* 250 S. C. 326, 157 S. E. (2d) 598 (1967). There two SLED agents had been engaged in a fight which was terminated by their superior. Shortly thereafter, the agents resumed the fight. Both men were armed and decided to resolve the dispute on the pistol range. One agent was killed and his beneficiaries sought Workmen's Compensation benefits.

The court denied recovery and stated:

"We think that the only reasonable inference from the testimony is that the act of the deceased in engaging in the final altercation with his fellow officer, both of whom were armed, was not impulsive or instinctive, but deliberate, and resulted from his voluntary acquiescence in the settlement of the dispute by violence . . . The fatal altercation was voluntarily entered into, and the conduct of the deceased was of such a grave or serious nature as to evidence a willful intent on his part to injure his fellow employee . . ." 250 S. C. at 331, 157 S. E. (2d) at 600.

The test for the aggressor defense employed in *Zeigler* was not merely who was the instigator or aggressor. The statute does not afford a defense based merely on who strikes the first blow. Its application is limited to "those cases where it is shown that the acts of the employee are so serious and aggravated as to evince a willful intent to injure." *Zeigler v. S. C. Law Enforcement Division, supra,* p. 329, 157 S. E. (2d) at 599.

One reason for the limited application of the aggressor defense is that the statutory language creating the defense is injury resulting from "willful intention" which has been interpreted as meaning a "deliberate intention or formed intention." *Reeves v. Carolina Foundry & Machine Works,* 194 S. C. 403, 9 S. E. (2d) 919, 921 (1940). If an altercation is spontaneous, impulsive, instinctive or otherwise lacking a deliberate or formed intention to do injury, the statutory defense is unavailable.[1]

Although the Commission is the fact finding body, where the evidence gives rise to but one reasonable inference the question becomes one of law for the courts to decide. *Privette v. S. C. State Forestry Commission,* 265 S. C. 117, 217 S. E. (2d) 25 (1975); *Davis v. McAfee Mfg. Co.,* 259 S. C. 433, 192 S. E. (2d) 328 (1972). The testimony inescapably establishes that there were indeterminate lapses of time between the knife-throwing incident, hammer-throwing incident, and ultimate injury-producing altercation. There is no evidence that the final event was voluntarily entered into or induced by the appellant's willful intent to injure. On the contrary, the only

---

1 A recent case relied upon by the Commission is *Byrd v. Hanes Corp.,* 262 S. C. 535, 205 S. E. (2d) 825 (1974). There the only issue was whether there was evidence to support a finding that a fight, which resulted in injuries to the claimant, arose from a personal matter. The only reference to the aggressor defense is in a narration of the Commission's finding.

Another case, *Lanford v. Clinton Cotton Mills,* 204 S. C. 423, 30 S. E. (2d) 36 (1944), recognized that injury resulting from an assault may not be compensable if the claimant committed a wilful assault. Exactly what constitutes a wilful assault was not elaborated upon because the Court concluded the evidence supported the Commission's finding that the claimant did not commit any assault.

testimony is that the ultimate altercation was spontaneous and impulsive rendering the "aggressor defense" inapplicable.

Section 72-14 contains a two-pronged test for compensable injuries: the injury must "arise out of" the employment and simultaneously coexist "in the course of" the employment.[2] *Douglas v. Spartan Mills, Startex Division,* 245 S. C. 265, 140 S. E. (2d) 173 (1965). The "arising out of" element refers to the origin of the cause of the accident. *Bickley v. South Carolina Electric & Gas Company,* 259 S. C. 463, 192 S. E. (2d) 866 (1972). Unquestionably, this element has been satisfied as the precipitation of the incidents was a dispute over work instructions.

We have recently held that an accident arises "in the course of employment" when it occurs "within the period of employment at a place where the employee reasonably may be in the performance of his duties . . . or engaged in something incidental thereto." *Beam v. State Workmen's Compensation Fund,* 261 S. C. 327, 331, 200 S. E. (2d) 83, 85 (1973). We also stated in that decision:

"The rule often recognized in workmen's compensation cases is that an employee, to be entitled to compensation, need not be in the actual performance of the duties for which he was expressly employed in order for his injury or death to be in the 'course of employment' and thus compensable. It is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment. *Kohlmayer v. Keller,* 24 Ohio St. (2d) 10, 53 Ohio Ops. (2d) 6, 263 N. E. (2d) 231." 261 S. C. at 332, 200 S. E. (2d) at 86.

The termination of employment does not instantaneously arrest compensation coverage. The employee is still within the course of employment for a reasonable

---

[2] Note that several authorities of significant stature have advanced a "Quantum theory" which would merge the dual tests into one minimal quantum test of work-connection. See Larson, Workmen's Compensation Law, § 29.10.

time to allow for his departure and the conclusion of his affairs. Larson, Workmen's Compensation Law, § 26.10. However, we need not rest our determination on this principle.

The employer testified that subsequent to telling appellant to go home, he instructed appellant to sit in the front office while he returned to the side of the station to hook up a trailer. When queried as to whether appellant performed any work after he left him in the office, the employer replied, "I couldn't say that he didn't." It is clear that the employer did not renew or revive his former dismissal instruction. It is equally clear that appellant was still subject to his employer's supervision and control at the time of the incident. There is no evidence that appellant was not engaged in his employment duties or some acitvities incidental thereto. At the time of the altercation, appellant was, by the consent and direction of his employer, at a place where he could reasonably be engaged in the performance of his duties. Under the facts and circumstances of this case we are unable to conclude that the injury did not arise in the course of his employment.

Finally, in order for intoxication to be a bar to recovery it must be the proximate cause of the injury. *Reeves v. Carolina Foundry and Machine Works,* 194 S. C. 403, 9 S. E. (2d) 919 (1940); Section 72-156, Code of Laws, 1962.

At most, appellant was injured not as a result of his alleged intoxication, but after he had been drinking.

The judgment of the trial court is accordingly reversed, and this case is remanded thereto for an entry of judgment in favor of the appellant.

Reversed and remanded.

LEWIS, C. J., and RHODES and GREGORY, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting).

I respectfully dissent and would affirm the order of the lower court.

The Industrial Commission takes the place of a jury and its findings of fact should be sustained by both the circuit court and this Court unless it can be said that the only reasonable inference to be drawn from the whole of the evidence is contrary to the commission's findings. The single commissioner's findings were concurred in by the full commission (only one member dissenting). The facts found included the following:

"3. That it appears from the weight of the more credible testimony that the claimant was the aggressor in a fight from which he received his injury.

"4. That it appears from the weight of the more credible testimony that the claimant had a very serious drinking problem and was drinking on the day in question

"5. That it appears from the testimony of Mr. W. W. Champion that this employee had been dismissed of his responsibilities for the day and had been told to leave the place of employment prior to his injury.

"6. That it is our finding of fact that Toby Brown testified truthfully when he told the Commission that the Claimant called him "a long haired son-of-a-bitch" and then drew back a tire iron to strike him while they were standing within close proximity of one another near the cash register at Champion's American Service Center. We are compelled to disbelieve the claimant's version of how the fight began due to the many conflicts between his testimony and that of his employer, Mr. W. W. Champion, and, due to the claimant's often repeated denials at the hearing that he was drinking on the day of his injury in spite of the contrary testimony of four witnesses, two of whom were trained medical personnel of the Veterans Administration Hospital."

It is the law of this State that a claimant cannot be said to have suffered "an injury by accident", as defined by §

72-14 of the Act, if he is found to be the aggressor. *Zeigler v. S. C. Law Enforcement Division*, 250 S. C. 326, 157 S. E. (2d) 598 (1967).

There is evidence (obviously believed by the Commission) to the effect that the difficulty commenced when the claimant "reached under the counter and got the piece of iron and drew it back at me like he was gonna hit me." In reversing the lower court, the proposed opinion adopts the argument of counsel for the claimant that the difficulty involved two separate fights and that the claimant was not the aggressor in the second fight. Both the Industrial Commission and the circuit judge rejected this version of the evidence, and I agree. While the time elements involved between the initial aggression of the claimant and the injuries sustained are not clearly spelled out, it is obvious that the Industrial Commission looked upon the difficulty as one conflict with, at most, a lull between two stages of the fight.

In my view, the order of Special Judge Joseph R. Moss properly disposed of this issue when he said:

"On appeal, counsel for the claimant ably argued that the only reasonable inference to be made from the testimony and evidence is that there were two separate altercations on the day in question, and that the co-employee, Mr. Toby Brown, was clearly the aggressor in the second fight during which the claimant received his injury. While such an inference is possible from the testimony of the employer, Mr. W. W. Champion, who recalled having made some effort to separate the combatants in the midst of their battle, it is certainly not the only possible inference that can be made from the testimony. The co-employee, Mr. Brown, made no mention of Mr. Champion's efforts as a peacemaker, and the claimant testified that he never spoke with Mr. Champion until after he was injured. Also, it appears from Mr. Champion's version of the incident that after the initial lead pipe, knife, and hammer throwing incidents, he asked the claimant to remain in the service station office or go home. What the

claimant's counsel characterizes as the 'second fight' occurred outside the service station office on the pavement where Mr. Brown had been working. Therefore, it is at least inferable that even if there were two fights instead of one, as claimant's counsel insists, that it was the claimant, Mr. Kinsey, who renewed hostilities by seeking out Mr. Brown, rather than the opposite being true."

I would affirm the lower court.