19052

Mrs. Sivell THARPE, Appellant, v. G. E. MOORE COMPANY, Inc., and Federated Mutual Implement and Hardware Insurance Company, Respondents.

(174 S. E. (2d) 397)

*Messrs. Charles & Charles,* and *Pract & Wyndham,* of Greenwood, *for Appellant,*

*Messrs. Jefferies & Groves,* of Greenwood, *for Respondent,*

May 12, 1970.

BRAILSFORD, Justice.

In this workmen's compensation case, the sole issue is whether W. L. Tharpe, the clamant's intestate, was an employee of G. E. Moore Company, Inc., when he

sustained a fatal, work-connected injury on October 7, 1966, or whether, instead, he was an independent contractor. The South Carolina Industrial Commission, affirming the hearing commissioner by three to two decision, concluded that Tharpe was an employee. The circuit court reversed. The issue is jurisdictional, and the conclusion of the Commission is subject to judicial review even though supported by evidence. *Marlow v. E. L. Jones & Son, Inc.,* 248 S. C. 568, 151 S. E. (2d) 747 (1966). The burden is upon appellant to convince us that the decision of the circuit court is against the preponderance of the evidence.

In determining whether an injured person was an employee or an independent contractor, "(t)he general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work'." *Bates v. Legette,* 239 S. C. 25, 34-35, 121 S. E. (2d) 289, 293 (1961).

Tharpe was accidentally killed while he and three workmen were installing a water line on property of Clinton Cotton Mills at Clinton, South Carolina. Moore had contracted with Clinton Mills to install this line for cost plus 10%, not to exceed $1,500.00. Tharpe commenced the work on October 3, 1966, by engagement of Moore and was killed on Friday of the same week.

Claimant offered testimony that after the accident G. E. Moore, president of the company, hereafter referred to as Moore stated that Tharpe was employed on the job as foreman at a salary of $165.00 per week. There was some other slight evidence that his capacity was that of a foreman. On the other hand, Moore testified that he had by oral agreement sub-contracted the work to Tharpe, who had under-

taken to install the line for cost plus 8%, not to exceed $1,500.00. The following written memorandum from Moore to Tharpe was received in evidence:

"This is to confirm our verbal agreement of today. You are to furnish all labor, materials, and equipment and install water lines in Clinton, S. C. for all costs plus a fee of 8% and you guarantee the entire cost not to exceed $1,500.00— Work to start at once."

Moore further testified that he and Tharpe agreed upon $165.00 per week as the value of Tharpe's services on the job, to be included in the lump sum payment upon its completion.

Tharpe had formerly been employed by Britt Construction Company of Greenwood. Several months before his death, he quit his job and went into the construction business for himself. He had business cards and stationery printed, acquired equipment, hired workmen and sub-contracted several jobs. One of these was the installation of sewer lines at Laurens under a sub-contract with Moore for $7,300.00. This job had been substantially completed before October 1, 1966, and Tharpe moved his equipment and employees from the Laurens job to Clinton Cotton Mills when he commenced the installation of the water line there.

The circuit judge's conclusion that Tharpe was an independent contractor was bottomed upon a painstaking and convincing analysis of the evidence, which need not be repeated here. His conclusion that the parties intended that Tharpe should perform the work as an independent contractor is supported by the clear preponderance of the evidence. Indeed, the Commission made no finding inconsistent with this aspect of the decision. Its contrary conclusion as to Tharpe's status was based upon a finding that Tharpe was subject to Moore's supervision and control as to the manner or means of accomplishing the work.

We do not so construe the testimony. Certainly there is no direct evidence that Moore retained control of the means by which the work should be accomplished. Nor is there evi-

dence that he, or any other representative of the company, in fact exercised control. He visited the job site only once and made no inspection of the work on this occasion. While there, apparently at Tharpe's instigation, the two men discussed the method to be followed in tapping on to an existing line which was carrying water under pressure.

Professor Larson in his work on Workmen's Compensation Law, Volume 1A, Sec. 44.30-.35 (1967), discusses four factors which are well established tests of the right of control, in his words, "resorted to in almost every case." *Id.* at 653. These are (1) direct evidence of right to or exercise of control, (2) method of payment, (3) furnishing of equipment and (4) right to fire. [1] *Id.* at 653.

The absence of direct evidence of the right to or exercise of control has already been commented on.

Tharpe was entitled to payment only on a completed project basis, which "is indicative of independent contractor status." *Id.* at 658. On first impression the writer viewed the agreement that Tharpe should charge for his time at $165.00 per week as tantamount to the payment to him of a weekly wage in that amount by Moore. However, this is a misconception. If Tharpe had survived the first week on the job, he would not then have been entitled to compensation for his services. His bargain was to complete the job for cost, including an allowance for his services, plus 8%, provided the total cost did not exceed $1,500.00. If he had completed the job in three weeks and the cost, exclusive of his services, had equalled $1,500.00, he could have collected nothing for his time. Tharpe took his chances as an entrepreneur. He did not earn wages or salary as an employee.

With minor exceptions, Tharpe furnished his own equipment for which, according to Moore's testimony, he was entitled to charge customary rentals, as part of the cost of

---

[1] We have resorted to these factors in a number of cases, *e. g., South Carolina Industrial Commission v. Progressive Life Ins. Co.,* 242 S. C. 547, 550, 131 S. E. (2d) 694, 695 (1963).

the job. This is the third factor discussed by Larson. *Id.* at 671.

Larson sums up the fourth factor, as follows: "The power to fire, it is often said, is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract." *Id.* at 680. Here, the parties contracted with respect to an entire project which Tharpe had the legal right to complete. Moore could not interfere with that right without incurring liability for breach of contract.

Moore's testimony that he would not have approved a payment to one of Tharpe's employees at a rate in excess of that justified by his job classification; that he would have terminated Tharpe's contract if he had found him drunk on the job or found that he was not performing the work in a proper manner, etc., is not at all inconsistent with Tharpe's status as an independent contractor. There exists in every contract an implied covenant of good faith and fair dealing. *Commercial Credit Corp. v. Nelson Motors, Inc.,* 247 S. C. 360, 147 S. E. (2d) 481 (1966), and in a contract of the nature here involved, an obligation to perform it in a workmanlike manner, 17 Am. Jur. (2d), Contracts, Sec. 371 (1964). Tharpe could not disregard these obligations and yet insist upon his contractual right to complete the project.

The burden was upon claimant to establish that her intestate was at work as an employee when he sustained his fatal injury. We are not convinced that the circuit court erred in concluding that she has failed to meet this burden.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.