George CRIM, Respondent v. DECORATOR'S SUPPLY, a/k/a Lexington Floor Covering, and Harleysville Mutual Casualty Company, Appellants.

(351 S. E. (2d) 520)

Court of Appeals

*Charles E. Carpenter, Jr.* and *J. Carlisle Oxner, Jr.,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for appellants.*

*William P. Walker, Jr.,* Lexington, *for respondent.*

Heard Dec. 11, 1986.

Decided Jan. 19, 1987.

GOOLSBY, Judge:

The sole issue in this workers' compensation case is whether the respondent George Crim was an employee of the appellant Lexington Floor Covering at the time he was injured. The single commissioner, the full commission, and the circuit court determined that Crim was an employee of Lexington Floor Covering. We affirm.

An award will not be made under our Worker's Compensation Act unless an employment relationship existed at the time of the alleged injury for which the claim is made. *McLeod v. Piggly Wiggly Carolina Company,* 280 S. C. 466, 313 S. E. (2d) 38 (1984). The determination of whether an employer-employee relationship existed is jurisdictional and the burden rests on the appellant to show that the circuit court's decision is against the preponderance of the evidence. *Chavis v. Watkins,* 256 S. C. 30, 180 S. E. (2d) 648 (1971); *Murray v. Aaron Mizell Trucking Co.,* 286 S. C. 351, 334 S. E. (2d) 128 (Ct. App. 1985).

Lexington Floor Covering claims that Crim was a subcontractor rather than an employee. Resolution of this question depends on whether Lexington Floor Covering had the right and authority to control and direct the particular work or undertaking performed by Crim as to either the manner or means of its accomplishment. *Chavis v. Watkins, supra.*

There are four factors to determine the right of control. "These are (1) direct evidence of the right to or exercise of control, (2) method of payment, (3) furnishing of equipment, and (4) right to fire." *Id.,* 256 S. C. at 32, 180 S. E. (2d) at 649.

With these considerations in mind, we turn now to the facts of this case.

Crim was a carpet, vinyl, and countertop installer and had been so for 20 years at the time of this action. In 1981, Lexington Floor Covering, a retail interior decorating business, hired Crim as an installer. On January 21,

1983, Crim was injured while unloading a roll of vinyl at Lexington Floor Covering's place of business.

Lexington Floor Covering paid Crim $1.50 per yard for installing carpet and $2.00 per foot for installing countertops and vinyl. He was paid once a week directly by Lexington Floor Covering. He worked approximately 30 to 50 hours a week installing for Lexington Floor Covering.

The owner of Lexington Floor Covering, John Whittle, testified that Crim worked only for Lexington Floor Covering. Crim never owned a company himself, never received a federal employer's identification number, and never filed a partnership or proprietor's tax return. He neither maintained a business listing in the telephone book nor advertised his services as a carpet installer in any other way. He did not carry Worker's Compensation Insurance.

Although Crim used his own van and tools and paid for his own gasoline and vehicle expenses, all the materials Crim installed were furnished by Lexington Floor Covering or its wholesale distributor, Decorator's Supply. It is undisputed that Lexington Floor Covering paid for the carpet, vinyl, and contertops. It included the cost of installation in the cost of materials to purchasers.

There is direct evidence in the record that Lexington Floor Covering had the right to and, in fact, exercised control over Crim. It required Crim to be at Lexington Floor Covering by 9:00 a.m. every morning. The homeowner or contractor always contacted Lexington Floor Covering and selected the desired interiors. After measuring a home, Lexington Floor Covering gave Crim the client's address and sent him to install whatever materials the client ordered. It also gave Crim specific instructions regarding how the material was to be installed.

Crim picked up the materials from the store or its wholesale distributor. He sometimes took invoices to clients and received checks from them made out to Lexington Floor Covering. If Crim encountered any problems while installing the materials, he called Lexington Floor Covering to receive instructions from Whittle or someone else at Lexington Floor Covering. Crim did not have the authority to change the layout of the materials he installed.

Whittle testified that he occasionally went to the site

where Crim was working while work was in progress to determine if it would be finished on schedule. He also inspected Crim's work after completion.

The termination of Crim's relationship with Lexington Floor Covering was solely within its control. In fact, Whittle fired Crim shortly after his injury occurred.

The conclusion of the circuit court and the Industrial Commission that Crim was performing work at the time he was injured as an employee of Lexington Floor Covering and not as a subcontractor, therefore, is supported by a preponderance of the evidence. *Chavis v. Watkins, supra.*

We need not address the question of whether Crim may recover workers' compensation benefits even if he is a subcontractor since we hold that he was an employee of Lexington Floor Covering.

Affirmed.

BELL and CURETON, JJ., concur.