STEMBRIDGE BUILDERS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Mario Zepeda, Appellee).

Second District (Industrial Commission Division)    No. 2—93—1181WC

Opinion filed June 23, 1994.—Rehearing denied August 1, 1994.

John A. Maciorowski, of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellant.

Craig S. Mielke, of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant was severely injured in a one-car accident while completing an errand for his employer. An eyewitness testified claimant was traveling at approximately 65 to 70 miles per hour in a 40-mile-per-hour zone when he lost control of his vehicle and flipped

it over several times. The arbitrator and Industrial Commission (Commission) awarded benefits concluding claimant's negligence in speeding did not remove him from the scope of his employment. The circuit court confirmed the Commission. On appeal, respondent contends that claimant's accident did not arise out of his employment, as a matter of law, because he was speeding in excess of 25 to 30 miles per hour over the posted limit when the accident occurred.

Except for claimant's testimony concerning the moments immediately preceding the accident, the evidence is largely undisputed. Claimant, who was almost 17 years of age on the date of the accident, was employed on a part-time basis by a family friend, Harold Stembridge, to perform odd jobs for the respondent construction company which Stembridge owned. On April 7, 1992, claimant completed his chores at 6 p.m. and went to the Stembridge home, where Stembridge asked him to run an errand. The errand entailed driving to a nearby bank and cashing a personal check for Stembridge while depositing a business-related check. Claimant was permitted to drive Stembridge's 1991 Honda Accord.

Claimant drove the approximately $1^1/2$ miles to the bank, made the transactions and began driving directly back toward the Stembridge residence. Claimant turned onto Montgomery Road heading west. At this point, the witnesses' stories diverge.

In claimant's estimation, he was driving between 50 to 60 miles per hour. Montgomery Road is a two-lane highway with a posted speed limit of 40 miles per hour. Claimant stated that a woman in another vehicle attempted to pass him in the left-hand lane. Claimant offered that he became frightened, slammed on the brakes, the car tipped over and he was thrown through the sunroof. He was familiar with the area, it was a clear day, and the road was straight, flat, and dry. Claimant also conceded that Stembridge did not tell him that he needed to hurry to complete the errand. Claimant had no further recollection of the accident.

Linda Dileo testified as the only other eyewitness. She was driving in the same direction as claimant. In her rearview mirror, she saw claimant turn onto Montgomery Road from a bank entrance. At that time, claimant was approximately 1,000 feet behind her. Dileo was driving at approximately 40 to 45 miles per hour and noticed claimant rapidly close the gap between his vehicle and hers.

As claimant's car came up behind her, he swerved to pass her in the left-hand lane and lost control of the vehicle. Although there was a van in the distance coming toward Dileo and claimant, it was still a long way off and there was more than sufficient time and distance for claimant to successfully pass Dileo's car. Nevertheless, claimant's car began swerving as he passed her, and, approximately 500 feet ahead

of her, claimant's car flipped over several times. Dileo estimated claimant's speed at 65 to 70 miles per hour.

Bradley Edwards, a police officer, investigated the accident. In his opinion, there was no condition of the roadway which caused the accident. Based on the witness report, Edwards believed that the accident was caused by claimant's driving in excess of the posted speed limit. Edwards had no opinion, however, as to whether driving at 65 to 70 miles per hour would increase the likelihood of an accident or losing control of a vehicle on a highway such as Montgomery Road.

In awarding benefits, the arbitrator chose to believe Dileo's version of the events. He concluded that claimant's excessive speed was the cause of the accident and that this conduct could be characterized as reckless. Nevertheless, because claimant was performing an act requested by the employer for the benefit of the employer, claimant was still within the scope of his employment even though he was acting negligently or recklessly when the accident occurred.

The Commission affirmed the arbitrator noting that an employee's negligent conduct while performing a job task did not, as a matter of law, take the employee out of the scope of employment. The Commission found claimant's injuries arose out of and in the course of employment because at the time of the accident claimant was performing assigned work duties, albeit negligently.

Respondent argues that the act which caused the injuries was claimant's intentional, personal decision to "grossly" speed 25 to 30 miles per hour over the posted speed limit and this act was totally unconnected to the work or task to which he had been assigned by his employer. For that reason, respondent maintains, as a matter of law, the injury did not arise out of the employment. We disagree.

An injury "arising out of" one's employment may be defined as one which has its origin in some risk so connected with, or incidental to, the employment as to create a causal connection between the employment and the injury. (*Greene v. Industrial Comm'n* (1981), 87 Ill. 2d 1, 4, 428 N.E.2d 476, 477.) A risk is incidental to the employment when it belongs to or is connected with what the employee has to do in fulfilling his duties. (*Fisher Body Division, General Motors Corp. v. Industrial Comm'n* (1968), 40 Ill. 2d 514, 516, 240 N.E.2d 694, 695.) An injury is not compensable if it resulted in a risk personal to the employee rather than incidental to the employment. (*Fisher Body Division*, 40 Ill. 2d at 517, 240 N.E.2d at 696.) Recklessly doing something persons are employed to do which is incidental to their work differs considerably from doing something totally uncon-

nected to the work. (*Gerald D. Hines Interests v. Industrial Comm'n* (1989), 191 Ill. App. 3d 913, 917, 548 N.E.2d 342, 345.) It has long been recognized that one of the objectives of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.* (now 820 ILCS 305/1 *et seq.* (West 1992))) was to do away with the defenses of contributory negligence or assumed risk. *Hines*, 191 Ill. App. 3d at 917, 548 N.E.2d at 345.

The respondent argues that the risk was purely personal to claimant and was no different from that to which the general public was exposed and, for that reason, is not compensable. However, the supreme court long ago stated:

> "If the work of the employee creates the necessity for travel, he is in the course of his employment. Persons using the highway are subjected to certain traffic risks and one of the them is the danger of collision. The perils of modern-day travel upon the highways are well known. Risk of accident is an ever-present menace. When it is necessitated by the employment the risks incidental thereto become the risks of the employment and remain so as long as the employee is acting in the course of his employer's business." (*Olson Drilling Co. v. Industrial Comm'n* (1944), 386 Ill. 402, 413, 54 N.E.2d 452, 457-58.)

Thus, because claimant was required to drive to complete the task assigned to him, the risk of accident was incidental to the employment.

The issue is whether speeding under the conditions which existed or which violates a statute constitutes a deviation which removes claimant from the scope of the employment. No Illinois cases are called to the court's attention. However, other jurisdictions have considered this issue. Professor Larson frames the analysis in the following manner:

> "The modern rule is that violation of a statute is not wilful misconduct *per se*. There must be the intentional doing of something of a quasi-criminal nature, either with knowledge that it is likely to result in serious injury, or with a wanton disregard of probable consequences." (1A A. Larson, Workmen's Compensation Law § 35.30, at 6—149 (1992).)

In applying this rule, it would appear the majority view is that excessive speeding, standing alone, does not, as a matter of law, disqualify an employee from coverage under the applicable compensation law.

For example, in *White v. C.H. Lyne Foundry & Machine Co.* (Fla. 1954), 74 So. 2d 538, there was some evidence decedent was traveling at 60 to 80 miles per hour when his automobile crashed although there were no eyewitnesses. The court found that the mere fact that

one was shown to have been driving more than 60 miles per hour (which was prohibited by statute) was not sufficient, standing alone, to prove such a wilful violation of a speed law as to preclude recovery. Likewise, in *Carey v. Bryan & Rollins* (1955), 49 Del. 387, 117 A.2d 240, compensation was awarded where claimant was shown to be driving 55 or 65 miles per hour in a 50-mile-per-hour zone when the accident occurred. A similar result obtained in *Bendett v. Mohican Co.* (1923), 98 Conn. 544, 120 A. 148, in which driving 40 miles per hour in a 20-mile-per-hour zone was held not to be wilful misconduct.

We believe the rule articulated by Professor Larson is consonant with the principles of tort law which apply generally in this State. Evidence of a defendant's servant driving too rapidly for existing road conditions is a circumstance which may be taken into consideration by the trier of fact as bearing upon the presence of wilful and wanton conduct. In *Porro v. P.T. Ferro Construction Co.* (1979), 72 Ill. App. 3d 377, 390 N.E.2d 958, the court stated:

"And, in a given case, speed itself might establish wilful and wanton conduct taking into consideration the degree of speed with reference to other surrounding facts and circumstances. [Citation.] Likewise, evidence of excessive speed also bears on the presence of negligent conduct. [Citations.] Thus, when speed is at issue, that which distinguishes wilful and wanton conduct from negligent conduct is the degree of speed. Where the speed is grossly fast for conditions, the conduct is wilful and wanton. Short of that, excessive speed constitutes negligent conduct. Indeed, plaintiff concedes that the presence or absence of wilful and wanton conduct often 'boils down' to the degree of flagrancy of the offending conduct." *Porro*, 72 Ill. App. 3d at 380, 390 N.E.2d at 960.

In this case, apart from the evidence of excessive speed, the surrounding circumstances do not suggest that the conduct was wilful and wanton rather than merely negligent. It was a clear day, the sun was shining, the road was straight, flat and dry. Except for Dileo's car and a van off in the distance, there were no other vehicles on the roadway. Claimant was a young and inexperienced driver who was operating an almost brand new automobile. Although the investigating police officer testified that no defect in the highway contributed to the accident, he had no opinion as to whether driving at 65 to 70 miles per hour would increase the likelihood of an accident on this stretch of two-lane blacktop.

Likewise, there is no evidence claimant had left the scope of his employment. Claimant was returning directly to his employer's resi-

dence. He was not engaging in some detour to pursue other activities unrelated to the employment. There is no evidence that the speeding was occasioned by activities such as drag racing or an attempt to elude a police vehicle which might support an argument that claimant had left the scope of his employment.

All of the cases cited by respondent are distinguishable. In each, where compensation was denied, the supreme court determined that the employee was injured while performing a task solely for his personal benefit or was injured by something completely outside the workplace or employment environment, or the Commission's decision in this regard was not against the manifest weight of the evidence. See *Cunningham v. Industrial Comm'n* (1980), 78 Ill. 2d 256, 399 N.E.2d 1300 (supreme court would not overturn a Commission decision that employee was acting outside the scope of employment when, in anger, he slammed his hand into a door breaking a bone); *Segler v. Industrial Comm'n* (1980), 81 Ill. 2d 125, 406 N.E.2d 542 (employee performing a task for personal comfort when he was injured retrieving a frozen pot pie he intended to eat from an industrial oven); *General Steel Castings Corp. v. Industrial Comm'n* (1944), 388 Ill. 66, 57 N.E.2d 454 (employee denied benefits after being struck by a train while crossing railroad tracks at a point other than regular crossing after completion of the day's work); *Howell Tractor & Equipment Co. v. Industrial Comm'n* (1980), 78 Ill. 2d 567, 403 N.E.2d 215 (traveling salesman not within scope of employment when struck by train at 2 a.m. after consuming five drinks and walking along tracks in a strange city without asking for directions or taxi service to his motel which was three miles from the point of the accident); *Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542, 578 N.E.2d 921 (benefits denied to employee injured at his work station when a truck crashed through the building wall).

The question of whether the conduct so deviated from the employer's business that it took the employee out of the scope of employment is a question of fact. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 483-84, 548 N.E.2d 1033, 1040.) The weight of authority is that excessive speed, standing alone, does not, *per se*, disqualify a claimant from recovery of benefits. The fact that the conduct may be illegal is also of no moment. (See *Paganelis*, 132 Ill. 2d at 485, 548 N.E.2d at 1041 (blood-alcohol level of .238% does not, as a matter of law, disqualify an employee driver from benefits).) As we stated in *Chadwick v. Industrial Comm'n* (1989), 179 Ill. App. 3d 715, 719, 534 N.E.2d 1000, 1002:

> "In this case, claimant was where he was supposed to be, doing what he was hired to do, albeit in an obviously negligent manner.

That the risk was unreasonable is immaterial since the violation [of a work safety rule] occurred within the course of claimant's employment."

Although there was evidence of negligent conduct on the part of claimant, we cannot say, as a matter of law, that the Commission erred in determining that claimant was still within the scope of his employment when he was injured returning to the home of his employer after running a business-related errand.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, SLATER, and RARICK, JJ., concur.