528 S.E.2d 435

**Lisa Ricks GRAY, Respondent,**

v.

**The CLUB GROUP, LTD. d/b/a Harbour Town Resort and National Liability & Fire Ins. Co., Appellants,**

v.

**CGL of Savannah and Granite State Ins. Co., Respondents.**

**No. 3119.**

Court of Appeals of South Carolina.

Heard Jan. 12, 2000.

Decided Feb. 22, 2000.

Rehearing Denied May 13, 2000.

176

Kay G. Crowe and Andrea C. Pope, both of Barnes, Alford, Stork & Johnson, of Columbia, for Appellants.

Edward K. Pritchard, III and J. Hubert Wood, III, both of Sinkler & Boyd, of Charleston; and Cory H: Fleming, of Moss & Kuhn, of Beaufort, for Respondents.

ANDERSON, Judge:

The Club Group, Ltd. (Club Group) appeals the Circuit Court's decision affirming the Workers' Compensation Commission's order awarding benefits to Lisa Ricks Gray (Mrs. Gray) for the death of her husband, James Gray (Gray), and holding he was acting in the course and scope of his employment with Club Group at the time of his accident.[1] We affirm.

## FACTS/PROCEDURAL BACKGROUND

Gray was employed as a bellman on Hilton Head Island at Harbour Town, which is managed by Club Group. His duties with Club Group included greeting guests, delivering documents, courier work, running errands, and transporting guests. His normal working schedule was Monday through Thursday and one day on the weekend, with Fridays off.

In January 1996, the part owner and president of Club Group, Mark King, asked Gray if, for $35 including mileage, he would transport payroll information and other items between Harbour Town and the Henderson Golf Club (Henderson) in Savannah. Gray was to use his own automobile, and King calculated the mileage from Gray's home in Savannah to Henderson, then to Harbour Town, back to Henderson, and then to Gray's home.

Henderson is managed by CGL of Savannah (CGL). King is one of the three owners of CGL. Club Group provides "general administrative services" for CGL in its management of Henderson. While a CGL check paid Gray for his services

---

[1]. CGL of Savannah is a named respondent in this appeal. However, there is no reason to proceed with CGL in this matter. The Single Commissioner found CGL is exempt from the South Carolina Workers' Compensation Act under S.C.Code Ann. § 42-1-360, and no one has appealed that order. Concomitantly, no further consideration of CGL of Savannah will be undertaken by this Court.

and mileage, King admitted he alone had the right to fire Gray from his Friday courier duties.

Gray lived near Henderson and, before he started delivering payroll information between Harbour Town and Henderson, would come over to Harbour Town on Fridays to pick up his paycheck. When he started running deliveries between the companies, his normal routine was to arrive at Henderson on Fridays between 8:00 a.m. and noon, pick up Henderson's payroll data and anything else which needed to go, drive from Savannah to Hilton Head, drop off the information, pick up anything to go to Henderson, and return with Henderson's payroll checks. He was required to arrive back at Henderson before 2:00 p.m.

Henderson is located off Highway 204 in the outer perimeter of Savannah near I–95. Highway 204 is a four-lane divided highway characterized by fast-moving traffic. Henderson is equally accessible from Highway 204 by two separate routes. Gray would travel west on Highway 204 to get from his home to Henderson. Before his first trip to Henderson, Gray asked a manager at Henderson, Peter Rouillard, for the best directions to where he needed to go. He was told to take Highway 17 to Littleneck Road to a frontage road into the golf course.

On Friday, May 10, 1996, at about the time he would normally be expected at Henderson, Gray was involved in a serious car accident near Henderson on Highway 204. This was off the path given to Gray by Rouillard, but still only a half mile from an entrance to Henderson. Gray died as a result of the injuries from this accident.

A witness testified he saw Gray and another car swerving in and out of traffic going an estimated 85 miles per hour. Scott Simpkins, a Chatham County policeman, did not witness the accident, but stated that according to his calculations, Gray was traveling in excess of 120 mph. Simpkins explicated that eyewitness estimates may not be accurate, and his calculations of speed, taken from skid marks and damage of the vehicles, had never been proven wrong.

The Single Commissioner found Gray was employed by Club Group at the time of the accident and the accident was within the course and scope of his employment with Club

Group. The Single Commissioner awarded benefits to his survivors. This order was affirmed by the Full Commission. The Circuit Court affirmed the Full Commission's order.

## ISSUES

I. Did the Circuit Court err in applying the wrong standard of review?

II. Did the Circuit Court err in failing to find Gray was an Independent Contractor?

III. Did the Circuit Court err in finding substantial evidence to support the decision of the Workers' Compensation Commission?

## STANDARD OF REVIEW

### I. Jurisdictional Questions

■ "Judicial review of a Workers' Compensation decision is governed by the substantial evidence rule of the Administrative Procedures Act. However, when the Commission's jurisdiction is at issue, the reviewing court is not bound by the Commission's findings of fact upon which jurisdiction is dependent." *Lake v. Reeder Const. Co.*, 330 S.C. 242, 246, 498 S.E.2d 650, 653 (Ct.App.1998) (citing *Wilson v. Georgetown County*, 316 S.C. 92, 447 S.E.2d 841 (1994)).

■ If the factual issue before the Full Commission involves a jurisdictional question, this Court's review is governed by the preponderance of the evidence standard. *Vines v. Champion Bldg. Products*, 315 S.C. 13, 431 S.E.2d 585 (1993); *Lake v. Reeder Construction*, at 247, 498 S.E.2d at 653. *See also Kirksey v. Assurance Tire Co.*, 314 S.C. 43, 443 S.E.2d 803 (1994) (this Court can find facts in accordance with the preponderance of evidence when determining jurisdictional question in Workers' Compensation case); *Canady v. Charleston County Sch. Dist.*, 265 S.C. 21, 216 S.E.2d 755 (1975) (in determining whether Commission had jurisdiction of claim presented, this Court is not bound by the finding of fact by the Commission; this Court, and Circuit Court, has both the power and the duty to review entire record and find therefrom jurisdictional facts, without regard to the conclusion of Commission on such issue, and will decide jurisdictional question in

accord with the preponderance of evidence); *Sanders v. Litch-field Country Club,* 297 S.C. 339, 377 S.E.2d 111 (Ct.App.1989) (where jurisdictional issue is raised, this Court must review record and make its own determination whether the preponderance of evidence supports Commission's factual findings bearing on that issue).

In *Lake v. Reeder Const. Co.,* 330 S.C. 242, 246, 498 S.E.2d 650, 653 (Ct.App.1998), this Court held:

On appeal from the Workers' Compensation Commission, this Court may reverse where the decision is affected by an error of law. *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6) (Supp.1997). The question of subject matter jurisdiction is a question of law. *Bridges v. Wyandotte Worsted Co.,* 243 S.C. 1, 132 S.E.2d 18 (1963); *Bargesser v. Coleman Co.,* 230 S.C. 562, 96 S.E.2d 825 (1957); *Roper Hosp. v. Clemons,* 326 S.C. 534, 484 S.E.2d 598 (Ct.App.1997). Furthermore, it is the burden of the appellant to show that the Circuit Court's decision is against the preponderance of the evidence. *Chavis v. Watkins,* 256 S.C. 30, 180 S.E.2d 648 (1971); *Lake, supra; Crim v. Decorator's Supply,* 291 S.C. 193, 352 S.E.2d 520 (Ct.App.1987).

## II. A.P.A. Standard of Review

■ For all non-jurisdictional matters, the Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981). The appellate court has the power upon review to reverse or modify a decision if the findings and conclusions of the administrative agency are affected by error of law, clearly erroneous in view of the reliable and substantial evidence on the whole record, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. S.C.Code Ann. § 1–23–380(g) (1986 & Supp.1998).

■ The reviewing court may not substitute its judgment for that of the Full Commission as to the weight of the evidence on questions of fact, but may reverse if the decision is affected by an error of law. S.C.Code Ann. § 1–23–380(A)(6) (1998); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d

74 (Ct.App.1996). A reviewing court should affirm a decision by the Full Commission unless it is clearly erroneous in view of the substantial evidence on the whole record. *Lark, supra.* Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion the Full Commission reached. *Miller v. State Roofing Co.,* 312 S.C. 452, 441 S.E.2d 323 (1994). Furthermore, " 'substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark* at 135, 276 S.E.2d at 306.

## *LAW/ANALYSIS*

### I. Application of the Wrong Standard of Review

■ Club Group maintains the Circuit Court erred by applying the wrong standard of review in its determination of Gray's employment status with Club Group. We agree.

■ The existence of the employer-employee relationship is a jurisdictional question. *Glass v. Dow Chem. Co.,* 325 S.C. 198, 482 S.E.2d 49 (1997); *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 459 S.E.2d 302 (1995); *Wilson, supra; Vines, supra; Givens v. Steel Structures, Inc.,* 279 S.C. 12, 301 S.E.2d 545 (1983); *Canady, supra; Chavis, supra; Lake, supra; Spivey v. D.G. Constr. Co.,* 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996). In addition, an injured worker's employment status, as it affects jurisdiction, is a matter of law for decision by the court and includes the findings of fact which relate to jurisdiction. *Lake* at 247, 498 S.E.2d at 653; *Wheeler v. Morrison Machinery Co.,* 313 S.C. 440, 438 S.E.2d 264 (Ct.App.1993).

The Circuit Court's application of the substantial evidence standard of review to this issue was clearly error. The Circuit Court should have taken its own view of the preponderance of the evidence to review the jurisdictional question in this case. However, this error is harmless. A review under a preponderance of the evidence standard supports the finding Gray

was acting within the scope of his employment as an employee of Club Group at the time of his accident.

## II. Employment Status

 Club Group asserts the Circuit Court erred in finding Grey was an employee rather than an independent contractor. We disagree.

 A Workers' Compensation award will not be made unless an employment relationship existed at the time of the alleged injury for which the claim is made. *Spivey v. D.G. Constr. Co.,* 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996); *McLeod v. Piggly Wiggly Carolina Co.,* 280 S.C. 466, 313 S.E.2d 38 (Ct.App.1984). Before provisions of the Workers' Compensation Act can apply, an employer-employee relationship must exist; this is an initial fact to be established. *Dawkins v. Capitol Constr. Co.,* 250 S.C. 406, 158 S.E.2d 651 (1967).

 Whether an individual is an employee or an independent contractor is a fact-specific determination reached by applying certain general principles. *S.C. Workers' Compensation Comm'n v. Ray Covington Realtors Inc.,* 318 S.C. 546, 459 S.E.2d 302 (1995); *Spivey v. D.G. Const. Co.,* 321 S.C. 19, 467 S.E.2d 117 (Ct.App.1996). The South Carolina Supreme Court characterized the distinction between employees and independent contractors:

It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment. "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." 56 C.J.S. *Master and Servant* § 3(1); and "where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent; . . . ." 2 C.J.S. *Agency* § 2d.

*Young v. Warr,* 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969).

 "The general test is whether the alleged employer has 'the right and authority to control and direct the particular

work or undertaking, as to the manner or means of its accomplishment.'" *S.C. Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.,* 318 S.C. 546, 547, 459 S.E.2d 302, 303 (1995) (citing *Young*). There are four factors to determine the right of control. They are: (1) direct evidence of the right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Id.; Tharpe v. G.E. Moore Co.,* 254 S.C. 196, 200, 174 S.E.2d 397, 399 (1970); *Spivey, supra.*

This record epitomizes a factual disputation regarding the relationship of Gray to Club Group and CGL. There is no question Gray was an employee of Club Group Monday through Thursday and one day on the weekend. It is the nature of his employment on Fridays in question. King explained exactly what needed to be done on the Friday deliveries by Gray, and told him the deliveries needed to be completed by 2:00 p.m. Friday afternoons. Gray was paid an hourly rate Monday through Thursday and on the weekend. He was paid $35 for the time he expended on Fridays. Gray was paid by Club Group from a CGL account. All the checks for both companies were written by the controller of Club Group, and Club Group determined what payments were made from what checkbooks. While Gray used his own automobile when making his Friday deliveries, both King and Christiana Martin, controller of Club Group, testified Gray was paid for mileage compensating for both gas and wear and tear on the vehicle. Finally, King unequivocally retained the right to fire Gray if his work was not done satisfactorily.

The Workers' Compensation Act is to be given liberal construction, with doubts of jurisdiction resolved in favor of inclusion of employees within Workers' Compensation coverage. *Ost v. Integrated Products, Inc.,* 296 S.C. 241, 371 S.E.2d 796 (1988); *O'Briant v. Daniel Constr. Co.,* 279 S.C. 254, 305 S.E.2d 241 (1983); *White v. J.T. Strahan Co.,* 244 S.C. 120, 135 S.E.2d 720 (1964); *Pyett v. Marsh Plywood Corp.,* 240 S.C. 56, 124 S.E.2d 617 (1962); *Horton v. Baruch,* 217 S.C. 48, 59 S.E.2d 545 (1950). Any reasonable doubts as to construction should be resolved in favor of the claimant by including him within the coverage of the Workers' Compensation Act rather than excluding him. *Davis v. S.C. Dept. of Corrections,* 289 S.C. 123, 345 S.E.2d 245 (1986).

Because the issue in this case is jurisdictional, this Court has the power and duty to review the record and decide the jurisdictional facts in accordance with the preponderance of the evidence. *See Glass v. Dow Chem. Co.*, 325 S.C. 198, 482 S.E.2d 49 (1997); *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.*, *supra*; *Lake, supra*. The factors set forth in *Tharpe* are substantially satisfied in this case. We conclude by the preponderance of the evidence that Gray was an employee of Club Group.

### III. Substantial Evidence to Support the Decision of the Commission

Finally, Club Group contends the Circuit Court erred in finding there was substantial evidence to support the decision of the Workers' Compensation Commission. We disagree.

### A. Arising Out Of and In the Course and Scope of Employment

Club Group avers there was no substantial evidence to support the Commission's finding that Gray's fatal accident arose out of and in the course and scope of Gray's employment. In order for an injury to be compensable under the South Carolina Workers' Compensation Act, it must be an "injury by accident arising out of and in the course of the employment." S.C.Code Ann. § 42–1–160 (Supp.1998). *See Broughton v. South of the Border*, 336 S.C. 488, 520 S.E.2d 634 (Ct.App.1999).

The phrase "arising out of" refers to the injury's origin and cause; where as, "in the course of" refers to the time, place and circumstances under which the injury occurred. *Baggott v. Southern Music, Inc.*, 330 S.C. 1, 496 S.E.2d 852 (1998); *Broughton, supra*. Although the requirements are somewhat overlapping, they are not synonymous and both must exist simultaneously to allow the claimant to recover. *See Branch v. Pacific Mills*, 205 S.C. 353, 32 S.E.2d 1 (1944).

### 1. "Arising out of"

The "arising out of" the employment requirement for an injury to be compensable has been construed by our Supreme Court:

"It (the injury) arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

*Douglas v. Spartan Mills, Startex Div.*, 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965).

Gray was employed to make deliveries Friday mornings from Henderson to Hilton Head and then back. Here, the causal connection required to be compensable is present. His accident was directly attributable to his duties to act as a courier between Henderson and Hilton Head. There is substantial evidence in the record to support a finding that Gray was required to pick up his deliveries in the morning, and but for his employment he would not have been traveling to Henderson. Instead, he would have been traveling to Hilton Head to pick up his paycheck, as was his custom prior to his employment on Fridays.

### 2. "In the Course of the Employment"

The phrase "in the course of the employment" refers to the time, place, and circumstances under which the accident occurred. *Owings v. Anderson County Sheriff's Dep't*, 315 S.C. 297, 433 S.E.2d 869 (1993); *Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538 (1992). An injury

occurs "in the course of" employment within the meaning of the Workers' Compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto. *Baggott v. Southern Music, Inc.*, 330 S.C. 1, 496 S.E.2d 852 (1998); *Fowler v. Abbott Motor Co.*, 236 S.C. 226, 113 S.E.2d 737 (1960).

*Broughton v. South of the Border,* 336 S.C. 488, 498, 520 S.E.2d 634, 639 (Ct.App.1999).

Gray normally arrived at Henderson between 8:30 and 10:30 a.m. Henderson was located west of Gray's home on Highway 204. The accident occurred between 8:45 and 9:00 while Gray was driving west on Highway 204 only a half mile from the entrance to Henderson. The time and place of the accident lead to the conclusion that Gray was on his way to Henderson to fulfill his employment duties.

The factual findings of the Full Commission are presumed correct and will only be set aside if unsupported by substantial evidence. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 466 S.E.2d 357 (1996). We find there is substantial evidence to support the factual finding that Gray's accident occurred "arising out of" and "in the course of" his employment.

### B. Going and Coming Rule

Club Group argues even if Gray was on his way to Henderson when the accident occurred, he is barred from recovery by the going and coming rule. We disagree.

As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and, therefore, an injury sustained by accident at such time does not arise out of and in the course of his employment. *Medlin v. Upstate Plaster Service*, 329 S.C. 92, 495 S.E.2d 447 (1998). However, South Carolina has recognized a number of exceptions to this rule:

(1) Where, in going to and returning from work, the means of transportation is provided by the employer, *or the time that is consumed is paid for or included in the wages;*

(2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment;

(3) The way used is inherently dangerous and is either

(a) the exclusive way of ingress and egress to and from his work; or

(b) constructed and maintained by the employer; or

(4) That such injury incurred by a workman in the course of his travel to his place of work and not on the premises of his employer but in close proximity thereto is not compensable unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment of its use by the servant in going to and coming from his work.

*Medlin,* 329 S.C. at 95–96, 495 S.E.2d at 449 (emphasis added). A fifth exception allows compensation where an employee sustains an injury while performing a special task, service, mission, or errand for his employer, even before or after customary working hours, or on a day on which he does not ordinarily work. *Id.; Bickley v. South Carolina Elec. & Gas Co.,* 259 S.C. 463, 192 S.E.2d 866 (1972).

We find that the circumstances in this case fit into the first exception to the "going and coming rule." Gray was paid for both his travel time and for mileage. His time and mileage began when he left his home on Friday mornings. King testified these were both considerations in determining how much Gray should be paid for his deliveries. There is substantial evidence to support the Commission's finding that the first exception of the going and coming rule applies.

### C. Excessive Speed Precluding Benefits

██ Finally, Club Group professes if the going and coming rule does not apply, then recovery is still barred because Gray substantially deviated from his employment. We disagree.

██ An employee may, through his own actions, deviate from his employment to an extent to take the employee outside the course and scope of his employment. *Boykin v. Prioleau,* 255 S.C. 437, 179 S.E.2d 599 (1971) (employee took other employees on an extensive joy ride instead of taking them home); *White v. South Carolina State Highway Depart-*

*ment,* 226 S.C. 380, 85 S.E.2d 290 (1955) (employee deviated from his route twelve miles to pick up family).

Club Group asserts Gray's excessive speed and "racing" are substantial deviations, which remove his accident from the course and scope of his employment and preclude recovery of benefits. The Full Commission found: 1) although Gray may have been speeding, this does not constitute a substantial deviation; and 2) Club Group failed to prove Gray was racing.

South Carolina has not had opportunity to address whether speeding is a substantial deviation, or would otherwise exempt compensation. Few other states have addressed the issue. Most address speeding in regards to their Workers' Compensation statutes, which disallow claims where the injury is the result of the employee's "willful misconduct." South Carolina does not preclude recovery due to an employee's "willful misconduct."

■■■ The general rule in South Carolina is "fault has no bearing upon an employee's right to recover Workmen's Compensation benefits, and finds application only in those cases where it is shown that the acts of the employee are so serious and aggravated as to evince a wilful intent to injure." *Zeigler v. South Carolina Law Enforcement Div.,* 250 S.C. 326, 329, 157 S.E.2d 598, 599 (1967). The only exception under our statute is in S.C.Code Ann. § 42–9–60 (Supp.1998):

> No compensation shall be payable if the injury or death was occasioned by the intoxication of the employee or by the wilful intention of the employee to injure or kill himself or another.

Since South Carolina does not look to fault, Gray's speeding must be a substantial deviation to remove his actions from the course of his employment, and disallow recovery of benefits.

> [W]hen an employee is in the performance of the duties of the employer, the fact that the injury was sustained while performing the duty in an unauthorized manner or in violation of instruction or rules of the employer does not make the injury one incurred outside the scope of employment. *Exceeding a speed limit does not by itself constitute an abandonment of employment.* The result would be different if the claimant had been doing something he was not

authorized to do rather than doing a required act in an unauthorized manner.

2 Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 37.02 (1999) (citing *Williams v. Workmen's Compensation Appeals Board*, 41 Cal.App.3d 937, 116 Cal.Rptr. 607 (1974)) (emphasis added). As the Appellate Court of Illinois held:

> The weight of authority is that excessive speed, standing alone, does not, *per se*, disqualify a claimant from recovery of benefits.... "In this case, claimant was where he was supposed to be, doing what he was hired to do, albeit in an obviously negligent manner. That the risk was unreasonable is immaterial since the violation ... occurred within the course of claimant's employment."

*Stembridge Builders, Inc. v. Industrial Comm'n*, 263. Ill. App.3d 878, 201 Ill.Dec. 656, 636 N.E.2d 1088, 1092 (1994) (quoting *Chadwick v. Industrial Comm'n*, 179 Ill.App.3d 715, 128 Ill.Dec. 555, 534 N.E.2d 1000, 1002 (1989)).

In New York, benefits were challenged under a Workers' Compensation statute similar to our own. The court enunciated:

> The statute does not, however, deprive an employee or his dependents of workmen's compensation benefits because the precise act of the employee leading to or causing the injury may be literally in violation of a public statute, ordinance or regulation. This is especially true of a violation of the complex and ubiquitous statutes and rules governing the operation of motor vehicles on streets and highways.
>
> The exceptions to the general rule of compensation are set out in Workmen's Compensation Law, § 10. There is 'no liability' for compensation where it is 'occasioned by intoxication' or 'by wilful intention of the injured employee' to bring about his own or another employee's injury. *The statute discloses no interdiction on workmen's compensation benefits because there has been carelessness.* Indeed, the elimination of the employee's negligence as a cause for defeating his right to benefits for injury sustained in industrial mishap was one of the main objectives of the sponsors of workmen's compensation.

An employee may lose compensation benefits either by wilfulness or intoxication, neither of which is shown here. What is shown is that the decedent went too fast around a curve and was too far out of line and partly in the left lane of traffic; and that the operation of the vehicle was contrary to a local speed ordinance.

To say this is merely to say that decedent was negligent and that ingredient in his negligence was the act of violating a speed ordinance. This does not take his death outside the scope of the statutory benefits.

*Chaffee v. Effron,* 1 A.D.2d 197, 149 N.Y.S.2d 115, 117 (N.Y.App.Div.1956) (emphasis added).

We hold Gray's exceeding the speed limit in performance of his duties as a courier is not a substantial deviation, sufficient to remove the accident from the course and scope of employment. There is no evidence in the record to support Club Group's contention that Gray was racing. Club Group relies on the WTOC videotaped newscast. Its introduction was objected to, and the statements were hearsay. The Commission was correct in finding that Club Group failed to prove Gray was racing at the time of the accident. We make no conclusion as to whether speeding coupled with proven racing is sufficient to take the actions of the employee out of the course of his employment.

## CONCLUSION

We rule the Circuit Court erred in applying a substantial evidence standard of review rather than a preponderance of the evidence standard to the jurisdictional issue. However, this was harmless error. We conclude the preponderance of the evidence supports the finding that Gray was an employee of Club Group. We hold substantial evidence supports the Commission's determination that Gray was acting within the course and scope of his employment. The order of the Circuit Court affirming the award of benefits by the Full Commission is

**AFFIRMED.**

CONNOR, J., concurs.

STILWELL, J., dissents in separate opinion.

STILWELL, Judge (dissenting):

Because I do not believe the preponderance of the evidence indicates that Gray was an employee of The Club Group at the time of the accident, I respectfully dissent.

The law to be applied in this situation is clear and I agree the authorities cited by the majority control. I simply disagree with the factual analysis and the application of the law to the facts. I am not convinced the record substantiates by the preponderance of the evidence that The Club Group had "the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment." *South Carolina Workers' Compensation Comm'n v. Ray Covington Realtors, Inc.*, 318 S.C. 546, 547, 459 S.E.2d 302, 303 (1995) (quoting *Young v. Warr*, 252 S.C. 179, 165 S.E.2d 797 (1969)).

The analysis of Gray's relationship with The Club Group or CGL on Fridays is seriously complicated primarily because of the relationship between CGL and The Club Group and Mark King's role with both. King, being a principal of both The Club Group, a South Carolina based corporation, and CGL, a Georgia corporation, unquestionably had the right to control and direct Gray in his capacity as an employee of The Club Group.

King, together with Chris Martin, the comptroller for The Club Group, offered Gray the Friday courier job. Martin testified that it was the responsibility of CGL to transport the documents between Hilton Head and Savannah. As further evidence of that fact, the former manager of Henderson Golf Course, a CGL employee, was the delivery person immediately prior to Gray assuming the task.

King testified unequivocally that the only condition placed upon Gray as to the manner or means of performing the Friday task was that he must return to Henderson by 2:00 o'clock on Friday to deliver the payroll checks to the employees of CGL. It is not at all unusual that even in an indepen-

dent contractor situation time constraints are imposed on the performance of the task.

As to the method of payment, it is clear that Gray was paid a flat sum from a CGL account from which there were no withholdings for taxes, social security, or any fringe benefits. He furnished his own equipment, that being his vehicle. In contrast, he always drove The Club Group's van when he ran errands on days of the week other than Friday. While it is true that King testified that he retained the right to fire Gray, he did not testify that that right sprang from his capacity as president of The Club Group rather than as the principal of CGL who negotiated the agreement with Gray. After all, an independent contractor agreement of no fixed duration, just as employment at will, may be terminated at any time. *Id.* at 549, 459 S.E.2d at 303.

I would therefore hold that no employer-employee relationship existed and the workers' compensation commission did not have jurisdiction.